THE STATE ex rel. SUTER et al. v. WILDER, State Auditor.

**Division Two, May 22, 1906.**

1. **COST BILLS: By Whom Audited.** The judge and prosecuting attorney are required to examine and certify to the State Auditor the amount of fees chargeable against the state in a criminal case, but he is not concluded by their examination and certificate from auditing and settling such fees, nor do they determine the right of witnesses or veniremen to the fees mentioned in the cost bill, nor preclude the State Auditor from saying what fees are to be paid. Upon him is imposed the duty of auditing cost bills so certified to him by the judge and prosecuting attorney, and of determining what fees shall be allowed and paid.

2. ————: **State Auditor: Subject to Supervision of Supreme Court.** The State Auditor is subject to the supervision of the Supreme Court, and if he refuses to audit, adjust and settle costs which have been properly taxed and certified by the judge and prosecuting attorney, it will compel him by its process to perform his duty in that regard.

3. ————: **Witnesses Outside of State: Mileage.** Witnesses who are non-residents of this State and who are served with a subpoena at the place of their residence in a foreign State, commanding them to appear at the trial of a criminal cause in this State, and to attend in obedience to such subpoena, are not entitled to mileage from their place of residence in the foreign State to the place of trial in this State. A subpoena served without this State is not process, and attendance in obedience thereto is voluntary. Mileage can be taxed only when a subpoena has been legally served upon the witness.

4. ———: **Veniremen: Fees.** Jurors who are not on the regular panel but who are retained on the panel of forty qualified jurors from which the jury to try a murder case are selected, are entitled to their *per diem* and mileage, notwithstanding they may be challenged and not required to sit in the trial of the cause. But veniremen who are not qualified jurors, that is, who are not placed on the panel of forty, are not entitled to either mileage or *per diem*.

## Mandamus.

PEREMPTORY WRIT DENIED.

*Roy & Hays, Allison & Allison* and *Ben E. Hulse* for relators.

(1) Criminal costs are "such claims as are expressly required by law to be audited and settled by other officers or persons." Secs. 2845, 2847, 2856, 10389, R. S. 1899. The judge and prosecuting attorney are expressly required to adjudicate all the law and all the facts relative to the validity of costs in criminal cases. State ex rel. v. Oliver, 50 Mo. App. 217. (2) A nonresident witness served with a subpoena at his place of residence in another state and attending court and testifying in this State in obedience to such subpoena is entitled to his fees and mileage to and from his place of residence. State ex rel. v. Seibert, 130 Mo. 225. (3) As to the ground of the demurrer that it does not appear that the witnesses were sworn by the clerk as to the number of days attended and the number of miles traveled by them, we answer that the law presumes that the clerk did his duty in that regard, and this is strengthened by the additional presumption that the trial judge and prosecuting attorney found such to be the fact. (4) We claim that the jurors summoned in this cause and attending, but who were not on the panel of forty, are entitled to their fees and mileage under section 3874, Revised Statutes 1899.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) The auditor is the proper person to decide whether or not fees are due a certain witness, and he is not bound by the certificate of the circuit judge and prosecuting attorney. Morgan v. Buffington, 21 Mo. 549. (2) When a non-resident witness attends the trial of a criminal case in this state, he does so with the knowledge that he is doing a voluntary act. There is no power in the state to compel his attendance; neither is there any law which makes it the duty of the state officers to pay him for such attendance. While it may be true that the state is not acting in good faith towards those who aid in the punishment of criminals, and also that, without such payment, the criminal prosecutions might be greatly hampered, yet, such arguments should be presented to the law-making power and proper relief there asked. (3) There is nothing in the petition or alternative writ which shows that the various witnesses made oath to the correctness of their claims. Before they are entitled to any fees, such an oath must be made. R. S. 1899, sec. 3260; Veidt v. Railroad, 109 Mo. App. 102. There is no reason to presume that the clerk did his duty in this, rather than in any other matter connected with the criminal cost bill. The statute (R. S. 1899, sec. 2845) makes it the duty of the prosecuting attorney and circuit judge to examine the items in each cost bill, and to certify the same to the auditor. It is not made the duty of these two officers to examine and ascertain if the witnesses were sworn to the correctness of their claims. (4) The action of relator in refusing to allow fees to the veniremen, who were not chosen on the panel of forty, was correct. Our statute does not provide for paying said persons, and therefore the justice of their claim and the moral duty of the state to pay them does not take the place of a legislative enactment.

FOX, J.—This a proceeding by mandamus, insti-
tuted by relators, for the purpose of compelling the
respondent, as State Auditor, to audit a certain crim-
inal cost bill, which was signed and certified to by the
judge of the circuit court of Ralls county, and
also signed by the prosecuting attorney of said
county, and presented to said auditor. It is unneces-
sary to burden this opinion by reproducing the petition
upon which this proceeding is predicated. It will be
sufficient for the purpose of determining the contro-
verted propositions involved to indicate the substance
of the allegations of the petition. It substantially ap-
pears from the petition and the cost bill therein con-
tained that one Taylor Jones Watson was charged, by
information charged filed by the prosecuting attorney
of Ralls county, with murder in the first degree; that
he was tried at the first term of the circuit court of
Ralls county thereafter, and was acquitted. Prior to
said trial the state and the defendant had subpoenas
regularly issued for a number of persons, commanding
them to appear at said trial and testify in said case;
said subpoenas being regularly served on them at the
residences of the various witnesses, which were in the
states of Illinois, Colorado, Indiana, California, Mich-
igan, Iowa and Virginia. In response to said sub-
poenas, said witnesses appeared in Ralls county and
testified at said trial. The petition and alternative writ
further state that all of said witnesses have, for value
received, sold and assigned the fees due them for said
attendance to the relators herein. That the respond-
ent failed and refused to audit said criminal cost bill
because, in his judgment, said non-resident witnesses
were not entitled to claim mileage from places outside
of this State. The petition and alternative writ further
recite that, in said cost bill, there are the names of a
number of citizens of Ralls county, who were summon-
ed to serve on said jury, but were not selected on the
panel of forty; and the cost bill also states the amount

due each verireman for his attendance and mileage. That the auditor failed and refused to audit and allow said fees because, in his judgment, said persons were not entitled to claim for said attendance and mileage, not having been selected on the panel of forty. It is also alleged that the fees due said veniremen have been sold and assigned, for value received, to the relators herein.

To the petition filed in this cause the respondent interposed a demurrer and assigned the following reasons therefor:

"1. That the petition and alternative writ do not state facts sufficient to constitute a cause of action.

"2. That the petition and alternative writ do not state facts sufficient to entitle relators to any relief from this court.

"3. That the petition and alternative writ show that some of the witnesses, whose fees relators desire to have taxed against and paid by the state resided at the time they were served with a subpoena without the State of Missouri, and that they have claimed their attendance from their said residences to and from the county seat of Ralls county, Missouri.

"4. That the petition and alternative writ do not show that the witnesses, whose fees are by this proceeding sought to be taxed against and paid by the state, ever made oath to the correctness of said fees before the circuit clerk of Ralls county, Missouri, as required by statute."

This proceeding was submitted to this court upon the petition and demurrer and that constitutes the record before us for consideration.

OPINION.

This record presents three distinct propositions for our consideration:

1.  Are the costs in criminal cases finally audited by the judge and prosecuting attorney, who certify the bills under the provisions of the statute, and is their certificate to the fee bill final and conclusive upon the auditor?

2.  Are witnesses, who are non-residents of this State, and are served with a subpoena at the place of their residence in a foreign State, commanding them to appear at the trial of a criminal cause in this State, entitled to mileage, as such witnesses, from their place of residence in the foreign State to the place of trial in this State?

3.  Are veniremen, who are not chosen on the panel of forty jurors provided for in capital cases, entitled to their *per diem* and mileage under the provisions of law respecting the fees of jurors?

I.  The contention of relators upon the first proposition is predicated upon sections 2845, 2847 and 2856, Revised Statutes 1899.

Section 2845 substantially requires the prosecuting attorney to strictly examine each bill of costs delivered to him for allowance against the state or county, to ascertain as far as possible whether the services have been rendered for which charges are made and whether the fees charged are expressly given by law for such services.  Then it provides that he and the judge of the court, if the bill appears to be formal and correct, shall certify to the State Auditor or clerk of the county court, accordingly as the state or county is liable, the amount of such fee bill.

Section 2847 simply provides as to what the certificate of the judge and the prosecuting attorney shall contain, that is, that they have strictly examined the bill of costs; that the defendant was convicted or acquitted, and if convicted the sentence and extent of punishment assessed, or the case continued generally as the case may be; that the offense charged is a capital one or

punishable solely by imprisonment in the penitentiary, as the case may be; that the services were rendered for which charges are made and that the fees charged are expressly authorized by law, and that they are properly taxed against the proper party, and that the fees of no more than three witnesses to prove any one fact are allowed; and as an additional statement where the defendant is convicted, the certificate shall show that the defendant is insolvent.

Section 2856 is simply a requirement that the clerks of the courts shall make copies of all original fee bills certified to the State Auditor for payment and file them with the treasurers of their respective counties, and that the State Auditor is required to draw his warrant in payment of such bill on the State Treasurer and transmit the same to the treasurer of the county from whence the bill originated.

Our attention is also directed to section 10389, Revised Statutes 1899, which provides that the auditor shall "audit, adjust and settle all claims against the state payable out of the treasury, except only such claims as may be expressly required by law to be audited and settled by other officers or persons," etc. It is earnestly insisted by relators that cost bills certified in the manner as indicated by the section herein cited is in effect the auditing and settling of the amount of such bills by the judge and prosecuting attorney, hence fall within the exceptions of section 10389, which provides that the auditor shall audit all claims except such claims as may be expressly required by law to be audited and settled by other officers and persons. In other words, it is claimed that under the section as herein indicated the judge and prosecuting attorney are expressly required to audit and settle all cost bills, and therefore under the provisions of the exceptions of section 10389 the auditor has nothing to do with the auditing and settling of bills of costs in criminal cases. We are unable to give our assent to this contention so

ably presented by learned counsel for relators. An analysis of the sections of the statute in reference to bills of costs as herein pointed out, makes it manifest that the Legislature never intended that this section should be regarded as authority on the part of the judge and prosecuting attorney to finally audit, adjust and settle all costs bills in criminal cases. The very terms of the statute negatives any such intention on the part of the law-making power. There are no such terms used in any of those sections which indicate that they are to audit, adjust and settle bills of costs, but it is apparent that this section means to impose the burden upon the judge and prosecuting attorney, who are presumed to be familiar with the legimate costs that have accrued in the case, to strictly examine the fee bills and certify them to the State Auditor, who finally adjusts and settles the same by the drawing of an auditor's warrant. Under this section the judge and prosecuting attorny by no means audit and settle finally the bill of costs, but they are simply required to make an examination and certify it to the State Auditor.

Under the law of 1837 the clerk of the circuit court was required to make out, under the directions of the circuit judge and circuit attorney, a full statement of all the costs accruing in cases where the state is liable to pay costs, and this statement was required to be signed by the judge and the circuit attorney, and the auditor was required to audit and adjust the same for the amount by him allowed on the treasurer. In State v. Hinkson, 7 Mo. l. c. 355, in discussing a cost bill certified by the judge and circuit attorney, under the law in force at that time, this court thus gave expression to its views upon the subject before it for consideration: "But it could not be for a moment supposed that the auditor ought to have allowed the charge for a guard to the jail, even though the accounts were certified by the judge and circuit attorney. Their certificate was intended to ascertain the truth of the facts only, as

whether such costs and charges were incurred. But if by negligence or mistake they charge to the state what the state is not bound to pay, it is the duty of the auditor to reject so much of such account as is improperly charged to the state. The act declares indeed that all accounts so certified shall be a sufficient voucher for the auditor's warrant, but did not intend that he ought to draw his warrant whether the costs allowed were legal or illegal.''

It is, however, insisted by counsel for relators that the rule as announced in that case is in fact changed by reason of the enactment of section 23, page 453, Revised Statutes 1855, and which is continued to the present time and is found in the Revised Statutes of 1899, section 2847, heretofore referred to. We are of the opinion that this section by no means changed the rule as announced in the case above cited. Doubtless the occasion of the enactment of that statute was that as the state increased in population costs in criminal cases also began to increase, and section 2847 was enacted for the purpose of impressing upon the judge and prosecuting officer the necessity of a strict examination of bills of costs in criminal cases, and to insure a careful and strict examination of such cost bills this section was enacted, which constantly kept before them the nature and character of their examination and also required them to give expression to such examination by having their certificates show in detail the proper taxation of costs. But as was ruled in case of State v. Hinkson, supra, it certainly will not be seriously contended that, if there is an improper cost taxed against the state in a cost bill, even though such bill is certified by the judge and prosecuting attorney, the auditor is concluded by such certificate and is powerless to correct such improper taxation of criminal costs. As was said in that case, their certificate was intended simply to ascertain the truth of the facts only as to whether such costs and charges were incurred, but if by negligence

or mistake they charge to the state what the state is not bound to pay, it is the duty of the auditor to reject so much of said account as is improperly charged to the state.

Morgan v. Buffington, 21 Mo. 549, while not a case in which the judge and prosecuting attorney or circuit attorney had certified a cost bill, was one in which the Speaker of the House of Representatives had, under the law, certified to an account of one of the members of the General Assembly, and it was contended there, as it is here, that the certificate was in effect an auditing and adjusting of the account and was conclusive upon the State Auditor, hence the principle involved in that proceeding is similar to the one presented here for consideration. Judge SCOTT, who delivered the opinion of the court, held that the auditor was not concluded by such certificate, and during the course of the opinion he very appropriately said: "Ours is a government of checks and stays. . . . . The auditor of public accounts is an important officer, entrusted with the management of the revenues of the State. Whilst the treasurer holds the iron or brazen key of the treasury, the auditor holds the legal key, and it is through his instrumentality alone that money can lawfully be drawn from it. The State looks to him as the protector of her treasure. The powers confided to him are necessarily large, and as by his mismanagement the State may at any time be rendered unable to fulfill her pecuniary engagements, so there should be a power in him to prevent such a state of things."

In State ex rel. McMurtry v. Auditor, 37 Mo. 176, in which the same proposition was involved, the court in disposing of the question said: "But as the relator's counsel, in his brief, has raised the point whether the auditor has any right to go behind the speaker's warrant, and whether the same should not be held conclusive, we will state preliminarily that he has such right without there is a law making such warrant or

certificate conclusive"—citing in support of the conclusion reached State v. Hinkson, 7 Mo. 353; Morgan v. Buffington, 21 Mo. 549.

State ex rel. Daily v. Auditor, 41 Mo. 1, was one involving the same question as the case at bar. In that case the cases of Morgan v. Buffington, and State ex rel. McMurtry v. Auditor, supra, were cited and approved. It was ruled in the Daily case that whenever it is intended that a claim resting on the state shall be audited by a different person or officer so as to take away the general power and responsibility from the auditor, it must be made to appear by an express provision of a legal enactment. It was further said during the course of the opinion in that case that "the certificate of the judge or circuit attorney is required to set out specifically certain facts in reference to such claims, among which is the fact that the services set out in the bill of costs were rendered, and that compensation for the same is given by law. . . . . . The substantial part of such a certificate, at last, is the statement that the services charged for have actually been rendered. It is evidently the intention of the statute to furnish this sort of proof as the most convenient and reliable that the case admits of, and at the same time to provide a check upon the clerks in charging for services which in point of fact may not have been rendered at all, and which might nevertheless be allowed and paid for but for the required examination. It is not, in our judgment, one of the claims 'expressly required by law to be audited and settled by other officers and persons' within the meaning of sec. 13, ch. 10, of the Gen. Stat., and the auditor is not concluded by the certificates."

We are of the opinion that the rules of law announced in the cases heretofore cited are applicable to the provisions of the statute in relation to cost bills in criminal cases as they now exist, and we are of the opinion that the certificate of the judge and prosecuting

attorney as to the taxation of costs in criminal cases is not conclusive upon the State Auditor, nor do we mean to say that the conclusion or disallowance by the State Auditor of a fee bill is conclusive upon the parties claiming the fees. The auditor is subject to the supervision of the Supreme Court, and if he refuses to audit, adjust and settle costs which have been properly taxed and certified by the judge and prosecuting attorney, the court will not hesitate by its process to compel him to perform his duty in that regard.

II. This leads us to the consideration of the second proposition involved in this proceeding, that is, are witnesses, who are non-residents of this State, and are served with a subpoena at the place of their residence in a foreign State, commanding them to appear at the trial of a criminal cause in this State, entitled to mileage as such witnesses from their place of residence in the foreign State to the place of trial in this State?

The petition alleges that the witnesses named in the cost bill were residents of a foreign State, and were served with a subpoena at the place of their residence, commanding them to appear and testify in a criminal cause at the place at which court was being held in this State. It follows that the demurrer to the petition admits the truth of these allegations and the question simply confronts us as to whether or not these witnesses under the law as it now exists are entitled to mileage from their respective places of residence in the foreign State to the place of trial in this State.

Sections 3259 and 3260, Revised Statutes 1899, by the terms employed in them, clearly indicate that witnesses in order to be entitled to claim mileage for attendance upon court in the trial of any particular case must have actually and necessarily attended such court in obedience to the process of the court. In the former section it is expressly provided that ''each witness shall be examined on oath by the court, or by the clerk when

the court shall so order, or by the justice, as the case may be, as to the number of days of his actual necessary attendance, under subpoena or recognizance, and the number of miles necessarily traveled; and in every case where a witness shall not, as such, have actually and necessarily attended such court, or before such justice, and withdrawn himself from his business during the full time for which pay is claimed, he shall not be allowed for more than one day's attendance.'' In the latter section it is provided that ''the clerk of each court of record shall, on the application of any witness to have his fees allowed, enter on his book, under the title of the cause in which the witness was summoned or recognized, or if before the grand jury, the name of the witness, the number of days he has attended and the number of miles he has necessarily to travel in consequence of the summons or recognizance, and shall swear the witness to the truth of the facts contained in said entry.''

It will not be seriously contended that the subpoenas in this cause which are alleged to have been served upon the witnesses at their places of residence in a foreign State were of any force or vitality. A subpoena issued from the courts of this State cannot have any extraterritorial operation, hence the service of the subpoenas of the witnesses whose claims for mileage are involved in this proceeding in another State were mere nullities and of no obligatory force upon the witnesses to obey the command contained in the subpoena. The rules of law applicable to this subject were fully discussed and announced in State ex rel. v. Seibert, 130 Mo. 202, by the Court in Banc. There were two opinions in that case, but upon the proposition that process served beyond the limits of this State were of no force and effect, there was no division of opinion. SHERWOOD, J., in that case, in treating of process, thus announced the law: ''When the Legislature treats of process and its service and recognizances, it will be

intended that such process can only be served within this State and that such recognizances only possess obligatory force within its borders. Neither process nor recognizances can have any extraterritorial operation. [State v. Pagels, 92 Mo. loc. cit. 308; State v. Butler, 67 Mo. loc. cit. 62; Board, etc., v. Chase, 24 Kan. 774.] And it would be beyond the power of the Legislature to authorize process to be effectual outside of this State. [Wilson v. Railroad, 108 Mo. 588.]''

One of the questions involved in that proceeding was the claim of a witness for mileage who resided in a foreign State, but who had been duly recognized by one of the courts of this State to appear at a subsequent term to testify in the trial of a cause. Judge SHERWOOD maintained that, notwithstanding the recognizance had been taken by the court in this State, the witness was not entitled to mileage traveled in obedience to such recognizance from the residence of the witness in the foreign State to the place of trial in this State designated in such recognizance. There were other reasons assigned in that case for the denial of the writ of mandamus compelling the State Auditor to audit and allow the mileage of the witness, and the conclusion reached was that the writ should be denied, in which all the members of the court concurred, but not on the ground, under the facts as developed in that case, that the witness was a non-resident of this State and had attended the trial of the cause in obedience to a recognizance entered into by one of the courts of this State. GANTT, J., expressed his views in a separate opinion in which a majority of the court concur, and it will be observed that his dissent to the opinion of Judge SHERWOOD, in the result of which the entire court concurred, was limited to so much of the opinion as announced that a non-resident witness *duly subpoenaed in this State* or having entered into recognizance under the order of a court having criminal jurisdiction and complied therewith, is not entitled to his mileage.

So it is apparent from that case that the distinction is clearly drawn as to the service and execution of process in this State and its service or execution in a foreign State. In other words, the proposition in which a majority of the court concurred, announced in the opinion by Judge GANTT, was that a non-resident witness who had been duly subpoenaed in this State or having entered into a recognizance under the order of a court having criminal jurisdiction, and complied therewith, was entitled to his mileage from his place of residence.

There is a marked distinction between a witness who has been duly subpoenaed or recognized in this State and one upon whom the process was served at his place of residence in a foreign State. In the first place, the service of the subpoena in the foreign State is of no force and effect, and is just the same as if no process at all had been served, and the witness under that sort of service might return to this State and would not by reason of it be subject to the compulsory process of attachment. But on the other hand, a non-resident witness who is duly and legally served with a subpoena in this State, while no compulsory process could be issued for him to his place of residence in a foreign State, yet if he should return to this State he would be subject to such compulsory process the same as any other witness residing in the State, hence it may very well be argued that the non-resident witness who has been duly served in this State with process, attends the trial of a cause in obedience to the commands of such subpoena, for the very reason that the moment he visits this State, it matters not how far distant from the place of trial, he could be compelled to obey the process so served upon him. By service of the process in this State, while the court was powerless to compel obedience to it, as long as the witness remained in a foreign State, yet the court did acquire such jurisdiction over the person of the witness as to enable it to compel obedience to the

commands of such process in any county of this State where the witness may be found, hence the witness who has been served with process in this State, though a resident of a foreign State, who attends the trial, may very appropriately say to the court that he did not care to be deprived of his liberty in visiting the State when occasion required in order to avoid the issuance and service of compulsory process, therefore, I am here and have traveled from my residence in a foreign State in obedience to the process which was properly and legally served upon me in this State. It follows under such circumstances as was ruled in State ex rel. v. Seibert, supra, the State could not be heard to complain that a witness, though living in another State, had obeyed the commands of its process and submitted to the jurisdiction of the court by reason of the proper and legal service of it in this State. However, that is not this case. The claim for mileage by the witnesses in this proceeding is based upon the service of process at their places of residence in another State. As before stated, this process and the service of it was without any force or effect, hence it must logically follow, there being no process served, their mileage traveled and attendance upon court was voluntary, and not in obedience to the commands of any process issued by the court.

This court has uniformly held that no costs can be taxed except such as the law in terms allows, and it being essential that the witnesses actually and necessarily travel the mileage in consequence of a subpoena legally served upon them, and there being no legal service of process upon the witnesses claiming fees in this case, it must be ruled that the auditor was warranted in refusing to allow the fees for such witnesses as certified by the judge and prosecuting attorney.

III. This brings us to the last proposition involved in this proceeding, which is embraced in the conten-

196 Sup.—28

tion of the relators that the persons claiming fees for jury service in this proceeding are entitled to their fees as jurors, notwithstanding they were not on the regular panel, nor were they on the panel of forty qualified jurors to try the case in which the fee bill is certified. This claim is predicated upon section 3784, Revised Statutes 1899, which provides: "Each juror not on the regular panel and summoned to sit as a juror in any criminal cause wherein the offense charged is punishable with death, or by imprisonment in the penitentiary for life, or for not less than a specified number of years and no limit to the time, shall be allowed the sum of one dollar per day for each day that he may be in attendance on said court, and five cents per mile for each mile traveled in going to and returning from said court, whether he sits in the trial of the cause or is challenged off."

After a careful consideration of the provisions of that section we have reached the conclusion that it only embraces such jurors as were qualified upon the panel of forty from which the panel of twelve to try said cause were to be selected. It is apparent from the terms employed in the section above quoted that the term "juror," as used in that section, means a qualified juror. This is made manifest by the closing terms of the section which says that the juror shall be entitled to his per diem and mileage "whether he sits in the trial of the cause or is challenged off." It is clear that this term would be absolutely meaningless if every person who was summoned in pursuance of the *venire* issued by the court to serve as jurors, were embraced in the provisions of that section and entitled to claim for jury service, notwithstanding they were not on the qualified panel of forty. That section simply means that the jurors who are not on the regular panel but are retained on the qualified panel of forty jurors from which the jury to try the cause must be selected, are entitled to their per diem and mileage, notwithstanding they may be challenged and not required to

sit in the trial of the cause. So it must be ruled upon this proposition that the auditor was warranted in refusing to allow jurors who were not on the qualified panel of forty fees as claimed in the fee bill in this proceeding.

We have thus indicated our views upon the questions presented by the record before us, and while it may be said that the conclusion reached upon the interpretation of the statutes in respect to fees of jurors and witnesses may operate a hardship and in many instances obstruct or at least retard the successful prosecution of criminal causes in this State, it must be remembered that the only duty imposed upon the courts of the country is to interpret and declare the law as it exists, and not make it. If the statutes of this State in their present form deal with jurors and witnesses in criminal cases unjustly, remedies for such imperfections must be sought in the legislative department of our state government.

Entertaining the views as herein expressed it results in the conclusion that the peremptory writ of mandamus should be denied, and it is so ordered.

All concur.