**STATE of Missouri,
Plaintiff–Respondent,**

v.

**William IVORY, Defendant–Appellant.**

**No. 41087.**

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 5, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 12, 1980.

Application to Transfer Denied
Jan. 13, 1981.

Robert C. Babione, Public Defender, Blair K. Drazic, Richard Burke, Asst. Public Defenders, St. Louis, for defendant–appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Richard F. Engel, Lisa M. Camel, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff–respondent.

STEWART, Presiding Judge.

Defendant William Ivory appeals from a jury verdict and judgment finding him guilty of robbery first degree and armed criminal action. The court assessed punishment under The Second Offender Act at twenty years imprisonment for the robbery

and ten years on the conviction for armed criminal action.

We affirm in part and reverse in part.

For reversal the defendant contends that the court erred in (1) refusing to issue a certificate to secure attendance of his alibi witnesses from the State of Colorado in accordance with the uniform law providing for attendance of witnesses outside the State of Missouri; (2) in failing to take any action toward compelling the attendance of his requested witnesses in violation of his right to compulsory process; (3) in permitting the State to draw an adverse inference from defendant's failure to call his alibi witnesses for the reason that the court had refused his request under the uniform law providing for attendance of witnesses from outside the State of Missouri; (4) in limiting defendant's opening statement to evidence that defendant would adduce; (5) in overruling his objection to questions of the State that informed the jury that an investigation led to the arrest of defendant because the "prosecutor drew the hearsay inference that other persons had implicated defendant"; and (6) in failing to discharge defendant because a mistrial, at defendant's request in a prior trial on the same charge, was required because of prosecutorial misconduct that constituted overreaching.

On January 3, 1977 at about 11:30 AM defendant entered the Romero Jewelry Store where Joseph Romero and his wife Mary Louise were working. Defendant looked at some rings for five to ten minutes. As he started to leave he knocked down a clock that was hanging on the wall. When Mr. Romero came from behind the counter to help replace the clock, defendant turned around with a sawed off shotgun and announced a holdup.

A juvenile then entered the store. When he came in he pulled back his coat and drew a machete from a sheath. Mr. and Mrs. Romero were herded into the back room. The juvenile went behind the counter, put on a pair of gloves, and began pulling merchandise into a shopping bag. An errand man came into the store and he was made to lie on the floor in the back room. De-

fendant then made all three persons go into a small bathroom and put a ladder against the door and warned them that they would be shot if they came out. They were able to free themselves after about five minutes and called the police.

We first consider whether the court erred in denying defendant's motion to secure attendance of out–of–state witnesses under the provision of the Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings, § 491.400 et seq. RSMo 1969.

The portion of The Act relevant to our consideration provides that if any person in any state that has adopted a similar act "is a material witness in a prosecution pending in a court of record in this state . . . a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will require." § 491.420(1).

Defendant's motion alleged that five named persons, residents of Denver, Colorado, were "material witnesses" in the case. It further alleged "that the reason that their testimony is material is that each would give evidence that the defendant was in their presence in Colorado at or near the time of the alleged incident. Their testimony would cumulatively constitute evidence of alibi."

The motion prayed that the court issue a certificate as called for in the statute or that the court secure the attendance of the witnesses "by other means."

At the hearing on the motion counsel for defendant testified "I have talked to the defendant and, based upon my confidential communications I believe that the testimony of these witnesses are absolutely necessary to his defense in that they establish an alibi." The trial court's order denying the motion stated that "the record before this court, at this time, is insufficient for the court to find that the 'witnesses' in question are 'material witnesses' under Section 491.-020 RSMo."

In this case of first impression we observe that The Act requires that "[t]his law shall

be so interpreted and construed as to effectuate its general purpose to make uniform the law of the states which enact it." § 491.440. With a view to achieving uniformity we have reviewed cases from other jurisdictions that have a statute similar to The Act under consideration.

■ These cases which we find to be persuasive hold that the issuance or denial of the certificate is a matter largely within the discretion of the trial judge. *Commonwealth v. Watkins*, 375 Mass. 472, 379 N.E.2d 1040, 1050 (1978); *People v. Newville*, 33 Cal.Rptr. 816, 220 Cal.App.2d 267 (Ct.App.1963). It is also generally held that the party seeking to compel the attendance of a witness from without the state has the burden of proving that the testimony of the witness is material; and that the testimony is admissible, and relevant to the party's case. *People v. McCartney*, 38 N.Y.2d 618, 381 N.Y.S.2d 855, 345 N.E.2d 326 (1976); *State v. Smith*, 87 N.J.Super. 98, 208 A.2d 171 (1965); *State v. Dragon*, 130 Vt. 334, 292 A.2d 826, 830 (1972).

■ In the case at bar the only evidence submitted in support of defendant's motion was the testimony of his counsel that, based upon confidential communication with his client he was of the opinion that the testimony of the witnesses would establish the defense of alibi. It was the duty of defendant to present to the court facts from which the court could find that the testimony of the out–of–state witnesses would be material and that it would be admissible. It was not the prerogative of defendant's counsel to make the determination that the facts disclosed to him in the confidential communication with his client revealed that the testimony of the witnesses would be material to the defense of his client. The defendant presented no facts upon which the court could make a determination that the testimony of the witnesses would be material. The defendant made no attempt to provide additional evidence on the subject between the time that the motion was heard and the time the case went to trial. We are in agreement with the trial court's conclusion that the record was insufficient for the court to find that the " 'witnesses' in question were 'material witnesses' under Sec. 491.020 RSMo."

■ Though obscure, defendant's point may also be read as complaining that because defendant failed to comply with § 491.020, the court should have found some other means of procuring the attendance of the witnesses. The defendant claims that the failure to do so deprived defendant of his right to compulsory process under the Sixth Amendment to the United States Constitution and Article I, Section 18(a) of the Missouri Constitution. We cannot agree.

■ Process issued out of the courts of the State of Missouri does not have any extraterritorial power. *State ex rel. Suter v. Wilder*, 196 Mo. 418, 95 S.W. 396, 399 (1906). This rule is not changed by the uniform law because The Act is reciprocal and a matter of comity. "It is operative only between states that have enacted it or similar legislation . . ." *State of New York v. O'Neill*, 359 U.S. 1, 79 S.Ct. 564, 3 L.Ed.2d 585 (1959). The failure of defendant to comply with the terms of The Act left the court powerless to compel the presence of the witnesses in any other manner. See *People v. McCartney, supra; Commonwealth v. Watkins, supra.*

■ Defendant urges us to grant him a new trial because the trial court permitted the prosecutor to argue an adverse inference from defendant's failure to produce his relatives and friends as witnesses in support of his alibi because the court refused to issue the certificate which would have permitted him to obtain process for the witnesses in the State of Colorado.

Defendant testified that he was in Denver, Colorado on January 3, 1977, the date of the robbery. He stated that he took a bus to Denver on December 24 to celebrate Christmas and his birthday with his daughters, his wife, other relatives and friends. His two daughters, two of their friends and the husband of one of the daughters drove him back to St. Louis the second week in January. No witnesses corroborated his testimony.

Counsel for the State, over the objection of defendant, argued:

"It's a little bit strange. A man who is convicted in 1939 and from then right on through, and has had a life conviction, and you're supposed to believe that man who told you he was visiting relatives, they drove him back here by car, the family. If they knew the way back to St. Louis from out there and they had a car, why didn't he get those relatives.

. . . . .

MR. FISCHER: These are daughters and his relatives and friends—"

In *State v. Price*, 541 S.W.2d 777 (Mo. App.1976), relied upon by defendant, Ms. Price testified that she had been framed and that she was accompanied by named persons. Defendant then proffered those persons as witnesses. They were not permitted to testify under the sanctions of Rule 25.45 when the State objected because the defense had not disclosed the names of the witnesses in response to the request for discovery. In final argument the prosecutor argued the failure on the part of defendant to produce the witnesses. This court reversed because "it is improper for a prosecutor, or defense attorney, to argue matters that the court has excluded." *Price* at 778.

In the case at bar the court did not exclude any evidence material to the point under discussion. The trial court's finding that defendant had not complied with § 491.420 at the time the motion was heard, was not a ruling excluding the testimony of the persons named in the motion. According to defendant's testimony at the trial the persons who would have been witnesses were close friends and relatives. He explained their failure to appear on the ground that he did not have the means to pay for their transportation to St. Louis and that they did not have the means to make the trip. The jury was not required

to believe this testimony. This is particularly true when we consider that he also testified that his friends and relatives had driven him to St. Louis from Denver in the second week of January and that they had advised him that they would appear at an earlier trial setting. He appears to excuse their failure to appear upon late notice of the trial setting.[1]

There can be no doubt that as relatives and close friends these witnesses were more available to defendant than they were to the State. *State v. Ganaway*, 556 S.W.2d 67 (Mo.App.1977). The court did not exclude the testimony of the witnesses. Although not necessary to our holding we note that the trial court in its order denying the relief sought under § 491.420 the court based its ruling upon the record "then before" it. This ruling was made on December 22, 1977. This trial was commenced on September 25, 1978. No attempt was made to supplement that record. Under the facts of this case the court did not err in permitting the prosecutor to draw an unfavorable inference from defendant's failure to produce the alibi witnesses. See *State v. Price, supra.*

■ Defendant next complains that the trial court erred in limiting his opening statement to evidence that would be adduced by defendant rather than commenting on evidence that he anticipated would be produced in the State's case.

After the State had made its opening statement defendant announced his desire to make an opening statement before the State presented its case. Upon objection as to the content of the statement, defendant advised the court that his statement would not be limited to the evidence that the defendant intended to produce. Counsel then made an offer as to the content of his proposed statement. The proposed statement covers a page and a half of the transcript which we need not set out. For the

---

1. He testified, "last year and I was told that—to find out when they all could be prepared to come for the trial and I got a reply back saying on the 29th day of September they would be here. When that day came nothing happened.

I didn't hear no more about that trial business until the latter part of this week that they came up with it again, witnesses and everything were forgotten about then."

most part it sets out and interprets what defendant anticipates the State's evidence would show and comments with respect to the effect of that evidence. Counsel stated that he would decline to make a statement if he was not allowed to include those matters proffered in his offer. As we read the proposed statement it can best be characterized as argument.

Argument is not the proper function of an opening statement. *State v. Arrington*, 375 S.W.2d 186[5] (Mo.1964). See also *State v. Feger*, 340 S.W.2d 716, 724 (Mo.1960) and *State v. Fleming*, 523 S.W.2d 849 (Mo.App.1975). Control of the opening statement is within the sound discretion of the trial court and we find no abuse of discretion in this case.

Defendant next alleges that the court erred in refusing to grant a mistrial and in overruling hearsay objections when a police officer informed the jury that defendant was arrested after investigation.

The police officer testified that he arrested the juvenile suspect and thereafter continued the investigation. The prosecutor then asked, "[s]pecifically, what did the investigation consist–." He was interrupted by an objection and at a side bar conference the prosecutor advised the court that he expected the officer to testify that the investigation consisted of interviewing people in the neighborhood. The court overruled the objection "at [that] point." The following then occurred within the hearing of the jury:

"Q (By Mr. Fischer) What investigation did you conduct after you took the juvenile, Bobby Williams, into custody?

A Okay. We learned through our investigation that the adult involved in the robbery–"

Defendant made an objection and asked that the court declare a mistrial. The court sustained the objection and stated "I'm going to instruct the jury to disregard this last remark. It was not responsive, it is bordering on an inference of hearsay and the request for mistrial will be denied." The court ordered the remark of the witness stricken and told the jury to disregard the answer.

The prosecutor subsequently asked, "[a]fter this investigation did you then make an arrest." The court promptly sustained defendant's objection to the question but refused to declare a mistrial.

Defendant's reliance upon *State v. Chernick*, 280 S.W.2d 56 (Mo.1955) is misplaced. In *Chernick* the witness testified that he talked to a co–actor in the crime and then arrested Chernick. *Chernick* holds that "if the declaration of a co–conspirator or co–actor sought to be shown in evidence is not in furtherance of the object of the unlawful combination, or if it was made prior to the formation thereof, or after the consummation of the purpose thereof, the objection to be made is that such declaration is hearsay statement and not binding upon the co–conspirator or co–actor on trial." *Chernick* at 60.

The matters complained of in this case make no reference to any conversation with the juvenile suspect, defendant's co–actor, that could be interpreted as leading to the arrest of defendant and does not come within the purview of *Chernick*. See *State v. Stevens*, 467 S.W.2d 10, 22 (Mo.1971).

In any event the trial court sustained the objection to the unresponsive partial answer of the police officer and ordered it stricken and told the jury to disregard the answer. The court also reacted swiftly to the question asked by the prosecutor. The trial court was in the best position to determine the effect of the remarks heard by the jury and to determine the proper remedy. We cannot say that the incidents were so grievous that their prejudicial effect was not removed by the actions taken by the trial court. *State v. Hoyel*, 534 S.W.2d 266, 270 (Mo.App.1975).

This is the second trial of this case. The first trial resulted in a verdict of guilty after which the trial court sustained defendant's motion for a new trial upon the ground that argument of the assistant circuit attorney was "fundamentally unfair and prejudicial and denied defendant a fair trial."

Defendant asks us to discharge the defendant contending that he was twice placed in jeopardy because the prosecutor in the first trial was guilty of prosecutorial error "undertaken to harass or prejudice the defendant." He places his reliance upon *United States v. Martin*, 561 F.2d 135 (8th Cir. 1977) which holds that gross negligence on the part of the prosecutor that gives defendant no choice except to move for a mistrial and subject himself to the ordeal of another trial violates defendant's constitutional right not to be twice put in jeopardy. We are not persuaded by this case nor do we find it apposite to the case at bar. In *Martin* the trial court declared a mistrial at the request of defendant. The issue before us is whether defendant may be retried after he has been granted a new trial at his request for prosecutorial misconduct after an adverse jury verdict. The difference lies in the fact that defendant here was not deprived of his right to go to the first jury and perhaps be acquitted. Where, however, a mistrial is declared sua sponte by the court or after defendant has been goaded into a request for a mistrial, he has been deprived of his right to have a particular tribunal complete the trial. There is a clear distinction between *Martin* and the case at bar. See *United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 556, 27 L.Ed.2d 543 (1971).

It is generally held that retrial after a verdict of guilty, to correct trial error including prosecutorial misconduct does not constitute double jeopardy. *Thompson v. State*, 576 S.W.2d 541 (Mo.App.1978). See also *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Defendant was not twice placed in jeopardy.

We are compelled to reverse that portion of the judgment convicting defendant of armed criminal action. *Sours v. State*, 603 S.W.2d 592 (Mo. banc 1980).

Judgment and sentence as to the charge of armed criminal action is reversed. Judgment and sentence as to robbery first degree is affirmed.

WEIER and SNYDER, JJ., concur.