[Crim. No. 4265. First Dist., Div. Two. Sept. 17, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES
NEWVILLE, Defendant and Appellant.

Katherine L. Dealey, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., Edward P. O'Brien, John S. McInerny, Robert R. Granucci

and Eric Collins, Deputy Attorneys General, for Plaintiff and Respondent.

AGEE, J.—Defendant appeals from a judgment of conviction of three violations of section 288 of the Penal Code (lewd and lascivious conduct). The first question is one of pleading.

On June 22, 1962, an information was filed charging appellant with the commission of the act denounced by section 288a of the Penal Code (oral copulation) with a boy whose first same is Donald.

On July 13, 1962, an amended information was filed which added a second count charging appellant with a violation of section 288 of the Penal Code upon the same boy. Appellant was duly arraigned and July 18, 1962, was fixed as the date for the reception of his plea to this amended information.

On July 17, 1962, the grand jury returned an indictment charging appellant with two violations of section 288 of the Penal Code, count one involving a boy named Ronald, and count two involving a boy named Coleman.

On July 18, 1962, appellant was arraigned upon the indictment. Thereafter, but on the same date, the minutes state that the following occurred: "The District Attorney . . . now presents an amended information and indictment charging Defendant with the offense of a violation of sections 288a and 288 of the Penal Code of the State of California on the amended information and two counts of a violation of section 288 of the Penal Code of the State of California on the indictment. Upon order of Court the Clerk files the amended information and indictment in Court." The appellant was thereupon arraigned on this "Indictment and Amended Information" and July 25, 1962, was fixed as the date for the reception of his plea thereto.

Respondent does not offer any explanation as to why the indictment and the amended information were consolidated into one pleading. The latter contains the identical language of the two accusatory pleadings which it replaces *and no more*. Even the titles identify the counts so as to distinguish between the indictment and the amended information. The same result would have obtained if the clerk of the court had merely stapled the indictment and the amended information together.

As appellant states, "it should be pointed out that, on July 18, 1962, the people had an amended information filed

July 13, 1962, which was properly supported by preliminary examination and filed, and that, on July 18, 1962, the people also had an indictment filed July 17, 1962, which was properly supported by a grand jury investigation and filed.''

 Appellant does not question that the court has the right to consolidate two actions for *trial* where, as here, the two accusatory pleadings charge offenses of the same class of crimes. (E.g., *People* v. *Bittick,* 177 Cal.App.2d 479, 482 [2 Cal.Rptr. 378].) This is so even though the accusatory pleadings consist of an indictment and an information. (*People* v. *Diaz,* 206 Cal.App.2d 651, 664 [24 Cal.Rptr. 367].)

Appellant's contention is that ''there is no provision under the law of this state for a *pleading,* [such as an] 'Indictment and Amended Information,' as was filed in the case on July 18, 1962.'' (Italics ours.)

Respondent relies upon section 954 of the Penal Code, which provides in part as follows: ''An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if *two* or more accusatory *pleadings* are filed in such cases in the same, court, the court may order *them* to be consolidated.'' (Italics added.)

We have not been able to find any appellate court decision which considers the propriety of consolidating the *pleadings* in two actions being consolidated for trial. However, it would appear that sections 960 and 1404 of the Penal Code are also applicable, at least in the present situation.

Section 960 provides as follows: ''No accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits.'' (See *People* v. *Howes* (1950) 99 Cal.App.2d 808, 816 [222 P.2d 969]; *People* v. *Leiva* (1955) 134 Cal.App.2d 100, 103 [285 P.2d 46]; *People* v. *Massey* (1957) 151 Cal.App.2d 623, 649 [312 P.2d 365].)

Section 1404 provides as follows: ''Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right.''

In his closing brief, appellant attempts to show that he was prejudiced by the consolidation of the two accusatory pleadings. He first points out that he was entitled to be tried on the charges contained in the information within 60 days after its filing. (Pen. Code, § 1382.)

When defendant refused to waive this time requirement, the court set both actions, which had been consolidated, for trial on August 15, 1962. Appellant's counsel stated that this date was satisfactory as to the trial of the charges in the amended information but that she desired more time to prepare for the trial of the charges contained in the indictment. The court nevertheless stayed with the August 15 date for the trial of both actions.

Appellant's argument seems to be that, while the 60-day period as to the information would expire on or about August 22, 1962, such period would not expire as to the indictment until on or about September 17, 1962, and that he would have been entitled to a trial date on or shortly prior to this latter date on the charges contained in the indictment if it had not been for the consolidation.

There is nothing in the statute (Pen. Code, § 1382) that gives a defendant the right to have his trial *delayed* until just before the 60-day period expires. He has a right to a speedy trial and the statute provides in effect that a trial held more than 60 days after the finding of the indictment or the filing of the information is not a speedy trial.

Here, appellant refused to waive this time provision and insisted on going to trial within the 60-day period as to the information. Since the two actions had been consolidated for trial, it was necessary to give the same date to the trial on the indictment also.

It is true that appellant's counsel advised the court that she was "going out on vacation next Friday" (August 3, 1962) but, other than that, there was no showing as to why she could not be ready on August 15, 1962, for trial of *both* actions.

It is also apparent that the same situation would have been before the court whether or not the accusatory pleadings had been consolidated. Appellant admits that the actions were properly consolidated for *trial*. That being so, one action could not be tried on one date and the other on another date.

The count alleging a violation of section 288a of the Penal Code was dismissed on motion of the prosecution and the case proceeded to trial on the remaining three charges on August

20, 1962. We find that appellant was not prejudiced by any of these proceedings taken prior to trial.

*Motion to inspect.* On August 3, 1962, appellant made a motion to inspect (1) oral statements of appellant; (2) oral statements of the three boys and their parents; (3) *"All police reports* made by the Police Department of San Jose in the above-entitled matters''; and (4) the appellant's ''rap-sheet.'' (Italics ours.)

The trial court granted appellant's motion as to all of the above items except the police reports and denied the latter on the ground that the request was too indefinite. This order is one which rests largely in the discretion of the court (*People* v. *Terry* (1962) 57 Cal.2d 538, 561 [21 Cal.Rptr. 185, 370 P.2d 985]; *Vetter* v. *Superior Court* (1961) 189 Cal.App.2d 132, 134 [10 Cal.Rptr. 890]) and must be based upon a proper showing. (*People* v. *Chapman* (1959) 52 Cal.2d 95, 98 [388 P.2d 428].)

In the instant case, the declarations of appellant and his counsel (which were not opposed by counterdeclarations) merely state on information and belief that police reports were made and that they allegedly would be material to the defense.

Even though these declarations were not contradicted, this does not mean that the court must grant the motion. It is still discretionary. A mere desire to see all matters which might be helpful to the defense is not a sufficient cause to compel production thereof. (*People* v. *Cooper* (1960) 53 Cal.2d 755, 770 [3 Cal.Rptr. 148, 349 P.2d 964]; *People* v. *Curry* (1961) 192 Cal.App.2d 664, 671 [13 Cal.Rptr. 596].) The motion as made before the lower court represented no more than such a desire.

Moreover, we think appellant has waived his right to complain on appeal about the denial of this portion of his motion by failing to renew it if he was still dissatisfied after inspecting all of the other requested material. (See *People* v. *Gallegos* (1960) 180 Cal.App.2d 274, 277 [4 Cal.Rptr. 413]; *People* v. *Mitman* (1960) 184 Cal.App.2d 685, 691 [7 Cal. Rptr. 712].)

At the hearing of the motion, the District Attorney stated: ''I am willing to give her [appellant's attorney], naturally, any of the other items as they may appear in portions of the police report, for example, if the report has part of a purported statement or purports to relate part of a statement of any of these witnesses or of the defendant, I will be glad

to give her that but I don't know of any case and there is none cited in the brief that entitles her for all police reports, period."

The court then stated: "I think that an order for all police reports or all certain kinds of reports is too indefinite. . . . I will tell you what you do, you [District Attorney] give her all these things that you are stating and if that's not satisfactory, let me know." To which appellant's counsel replied: "Thank you, Your Honor."

The motion was never renewed. Apparently, appellant was satisfied with the information made available by the granting of the rest of the motion. We find no error in the manner in which the lower court ruled upon the motion to inspect.

*Attendance of out-of-state witnesses.* On August 10, 1962, appellant filed a motion to compel the attendance of witnesses from without the state, pursuant to section 1334.3 of the Penal Code.

Appellant's counsel, in a supporting affidavit, identified the witnesses as the wife and 12-year-old daughter of appellant, stating that they were "material witnesses" and were located at Milwaukee, Wisconsin. The affidavit averred that they "will not return unless they are taken into custody and delivered to an officer of the State of California."

The only enlightenment as to what the wife might testify to is the incorporation by reference of a letter from appellant's former attorney to the wife, dated July 6, 1962, and the wife's reply thereto.

At the preliminary hearing on the charge contained in the original information, Donald had testified that the offense occurred at the appellant's home about noon on a Sunday on which day he, his younger brother, appellant and appellant's family had later attended a performance of the "Blue Angels" at Moffett Field. Donald had testified that appellant was alone in the house at the time of the commission of the offense.

The pertinent sentence in the attorney's letter of July 6, 1962, is as follows: "He [appellant] advises, to the best of my memory that the whole family went to church that morning, subsequently returned to the home and thereafter went to visit the Blue Angels."

The wife's reply in full is as follows: "I remember going to see the Blue Angels and I believe we took Donald and one of his brothers with us. We could have gone to church in

the morning, but I'm not sure of that as we didn't go too often, but I believe the children and I were home all that day, as we never went out much.''

Thus, with full knowledge of the nature of appellant's claim of alibi as to the Donald offense, his wife would not say that appellant had gone with the rest of the family to church on the Sunday forenoon in question.

The only other showing made on the motion was the affidavit of appellant himself. He avers that his wife and daughter are ''witnesses whose evidence is material to his defense'' and that ''[b]y said witnesses he expects to prove that he was with his family in the County of Santa Clara at the time the crimes alleged in the indictment and information are there stated to have been committed. . . .''

Appellant does not state upon what he based his expectations. There was nothing before the court to indicate that there had been any communication between himself and his wife or their daughter concerning the charges against him. There was no showing of any statement from either that would indicate any support for appellant's alibi.

The granting or denying of a motion under section 1334.3 of the Penal Code is largely discretionary with the lower court. The section reads as follows, so far as pertinent herein: ''If a person in any State, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions or grand jury investigations in this State, is a *material witness* in a prosecution pending in a court of record in this State, or in a grand jury investigation, a judge of such court *may* issue a certificate under the seal of the court stating these facts. . . .'' (Italics ours).

The lower court held that the showing made in support of the motion was not sufficient to justify a finding that these two witnesses were material witnesses and refused to issue a certificate to that effect, which appellant requested should include the provision that ''the witnesses be taken into immediate custody and delivered to an officer of the State of California to assure their attendance in the State of California.''

Section 1334.3 was adopted in this state from section 3 of the Uniform Act to Secure the Attendance of Witnesses From Without a State in Criminal Proceedings. Under a similar statute, the Supreme Court of Nevada, in *State* v. *Fouquette* (1950) 67 Nev. 505, 516 [221 P.2d 404] [cert.

denied 341 U.S. 932 (71 S.Ct. 799, 95 L.Ed. 1361); 342 U.S. 928 (72 S.Ct. 369, 96 L.Ed. 691) ], stated: "Material witnesses from without the state may, under certain conditions, be commanded to attend and testify in criminal prosecutions in the state. Obviously this does not mean that all persons are material witnesses who are so designated by either party, or because they might possibly give pertinent evidence at the trial. Whether the witnesses are material can only be determined by the judge after hearing. At such hearing a showing that the testimony to be given by the witnesses is material must be made."

The trial court in the instant case followed this line of reasoning, stating as follows: "I don't think a proper showing has been made for me to issue such a warrant. In the first place we just have an affidavit here that they are material witnesses, which means nothing to me. I don't know whether they are material or not. We have a letter from Mr. Dawson to Mrs. Newville with reference to the matter and we have here a copy of her letter back which means absolutely nothing as to what she would testify to. Certainly, before I would issue any order for the expenditure of county funds in the amount that is going to be necessary in this case, I would want to know definitely that the testimony would be material and would be forthcoming. I certainly wouldn't issue an order just based upon the fact that she might testify favorably to the defense, and in this case we don't even have the presumption that she would testify favorably. The presumption would be that she would be, if she would testify, undoubtedly an adverse witness. As far as the child is concerned, we know nothing whatsoever as to what the child would testify to. I think before I would in any way be justified in issuing such an order, I should know definitely what the testimony would be from the witnesses, and then I would determine whether or not it would be material and whether or not it would be of any assistance to the defendant."

The wisdom of the court's ruling was demonstrated at the trial. The defendant gave the following answers to the following questions: "Q. Did your wife refuse to come and testify for you? A. She said she knew nothing of the matter. Q. She said she knew nothing of the matter? A. Correct."

In our opinion, the trial court did not abuse its discretion in denying the motion to compel the attendance of the wife and daughter at the trial.

*Appellant's statement as to motive.* During his cross-examination, appellant denied that he had any motive or reason to commit any of the three offenses (Pen. Code, § 288) for which he was being tried. He was then asked if he did not make a statement on November 16, 1961, to Officer Barnes at the Menlo Park Police Station, in which he stated that he was seeking sexual relationships and outlets with young boys because of the sexual coldness of his wife. Appellant admitted that he had told Officer Barnes on that occasion that he had a sexual problem with his wife but stated that he could not recall making statements about seeking relationships with young boys. He repeatedly refused to deny the making of such statements, but stated that he did not recall doing so.

In rebuttal, Officer Barnes was called and testified that, at the time and place specified above, appellant informed him "that he was having certain sexual difficulties with his wife during that period of time, and that due to these sexual difficulties with his wife, which included his not having sexual fulfillment with her, that he was motivated to secure sexual outlets by relationships with young boys, and that the reason for doing this was because he didn't want to be unfaithful to his wife, that is the reason that he sought relationships with boys rather than with women or girls."

The jury was instructed in part, as follows: "Proof of a motive for an alleged crime is permissible and often valuable, but never is essential. . . When thus proved, motive becomes a circumstance, but nothing more than a circumstance, to be considered by you." (See *People* v. *Smith,* 204 Cal.App.2d 797, 802 [23 Cal.Rptr. 5]; *People* v. *Rosborough,* 178 Cal.App. 2d 156, 163 [2 Cal.Rptr. 669]; *People* v. *Wooten,* 162 Cal. App.2d 804, 816 [328 P.2d 1040].)

Appellant's objection appears to be that the evidence in question was not material because it did not tend to prove motive. He asks the question: "Is it an ordinary principle of human conduct that sexual problems with one's spouse motivates the spouse to perform acts of sex perversion?" Of course, the statement to Officer Barnes goes beyond this but, in any event, appellant's question is more properly an attack upon the weight to be given to the evidence of such sexual difficulty with his wife as it may relate to the nature of the charges herein rather than the admissibility of such evidence. As we have stated, the evidence merely supplied a motive or

an explanation for the conduct of which appellant was charged.

We find no error in the record, and the judgment is affirmed.

Shoemaker, Acting P. J., concurred.

A petition for a rehearing was denied October 1, 1963, and appellant's petition for a hearing by the Supreme Court was denied November 13, 1963.