[Crim. No. 3271. Fourth Dist., Div. One. Nov. 25, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN ANTHONY DAVID RHONE, Defendant and Appellant.

---

John W. Porter, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark L. Christiansen, Deputy Attorney General, for Plaintiff and Respondent.

WHELAN, J.—Defendant appeals from an order admitting him to probation following his conviction by a jury of assault (an offense included within the charge of assault with a deadly weapon of which he was found not guilty), and of two counts of battery on each of two peace officers.

On October 7, 1967, two on-duty uniformed San Diego police officers, Knoll and Smith, in a marked police vehicle driven by Knoll, saw a late model automobile come onto National Avenue from Wabash Freeway shortly before 9 p.m. The police vehicle, westbound on National Avenue, was passed by the other car, eastbound, traveling at a high rate of speed.

Knoll made a U-turn to follow the other car, which turned from National Avenue onto 35th Street, onto which the police car followed with its red light directed at the car ahead. Driving on 35th Street at as fast as 60 miles per hour, the police car did not gain on the other vehicle; 35th Street merged into Rigel Street about three blocks from National Avenue. After traveling one block on Rigel Street, the pursued car turned east onto Birch Street which it went along for one block to Siva onto which it turned and on which it traveled north for one block, and from which it turned west onto Acacia Street where it stopped in front of 3520 Acacia, the home of Mr. and Mrs. Autry. Rigel, Birch, Siva and Acacia Streets are unpaved, and the area is a residential one. During the chase, Smith, in order to avoid being thrown about, had to hold onto the door fixtures on his side. The rear-end of the pursued car fishtailed as it traveled over the streets after leaving National Avenue.

As Knoll came up behind the other car, defendant got out of the left front door of that car, went around the front of it and turned toward the entrance to 3520 Acacia Street. From the police car, which had then stopped, Smith called to

defendant to stop, that Smith wanted to talk to him. Defendant turned and looked at Smith and continued toward the house; the two police officers alighted and followed defendant who entered the house, into which the two policemen followed him, opening the screen door to pass through an otherwise opened door. Defendant had gone from the living room into a bedroom, into which the officers followed, and where Smith asked defendant to come outside, that Smith wanted to talk to him. Without saying anything, defendant went out the front door, followed by Smith and Knoll; outdoors, Knoll took hold of defendant's right arm and Smith of his left and conducted defendant to the police car where Smith told defendant he was under arrest for reckless driving; told defendant to put his arms behind his back so he might have handcuffs put on. Defendant said, ''You are not going to put me no place'' and shoved Smith so that the latter was thrown off balance. Smith attempted unsuccessfully to subdue defendant, in which effort Knoll also joined. In the ensuing melee, defendant pulled Smith's pistol in its holster away from Smith's belt, but during the struggle the pistol and holster were forced from defendant's hand. After the officers had subdued defendant, he broke away and ran. Smith then drew his pistol but did not fire it. Several hours later defendant surrendered himself into custody.

At the time, defendant, a 21-year-old Negro high school graduate, temporarily separated from his wife, was living with his mother on Rigel Street around the corner from the Autry house. He was six feet tall and weighed about 190 pounds. He was working as a welder's apprentice and a plumber's apprentice five and as many as seven days a week. The car followed by the police, a 1967 Plymouth Sports Fury, had been purchased by defendant in February.

## DEFENDANT'S CONTENTIONS

Defendant states the issues as follows:

''1. Whether the chief of police of the City of San Diego should have been permitted to testify under subpoena as an expert witness for the defense with respect to police practice in circumstances like those shown here.

''2. Whether the trial judge properly sustained objections to the hypothetical question sought to be propounded by the defense to the chief of police as an expert.

''3. Whether special interrogatories and special verdicts requested by the defendant should have been submitted to the jury.

"4. Whether the trial court erred in refusing a 'formula' instruction to the jury on the issue of self-defense, offered by the defendant.[1]

"5. Whether the trial court should have instructed the jury, as requested by the defendant on the effect of the violation of Penal Code 844 by the police officers as disclosed in the evidence at the trial.

"6. Whether the defendant should have been permitted to refer, in voir dire of the jury panel and in closing argument, to portions of the report of the National Advisory Commission on Civil Disorders relative to community-police relationships in the ghettoes."

## DISCUSSION OF THE EVIDENCE

The evidence presented by defendant would have placed the emphasis on issues quite different from those stated above. Defendant's testimony was that he had last driven his car at least a half hour before the police entered the Autry house; that just before his arrest he himself had gone to the Autry house from his mother's home to make a phone call and saw his wife, another woman and his two children in the car as he went toward the Autry house and stopped to speak to them.

He concedes, however, that the evidence was sufficient to support the verdicts.

## DEFENDANT'S FIRST CONTENTION

It is claimed that a police officer is competent to give an expert opinion as to whether, under stated circumstances, another police officer uses force upon a person without lawful necessity.

A hypothetical question was prepared covering defendant's contentions as to the circumstances.

Defendant obtained and had served upon the San Diego chief of police a subpoena for his appearance at 2 p.m. of the day the trial commenced. The police chief presented, through the district attorney, his statement that he did not know anything about the facts of the case, and a motion to quash the subpoena.

Defendant urged to the court that he wished to examine the police chief as an expert as to whether the circumstances of defendant's encounter with the police on October 7 were such as to make the police guilty of a violation of section 149, Penal Code, which provides: "Every public officer who, under

---

[1]Defense counsel at the time of oral argument stated he did not continue to make that contention.

color of authority, without lawful necessity, assaults or beats any person, is punishable by a fine not exceeding five thousand dollars, or by imprisonment in the state prison not exceeding five years or in a county jail not exceeding one year, or by both such fine and imprisonment.''

The court granted the motion to quash.

 There is no statutory authority to quash a subpoena, other than a subpoena duces tecum. It was held in an early case that in the absence of a statutory provision for such an order, an order quashing a subpoena was a nullity. (*Pfister* v. *Superior Court*, 64 Cal. 400 [1 P. 492].) It has since been established that the court may quash a subpena that is regular on its face where the facts justify such action. The Supreme Court has said: ''The defendant is entitled to compel the attendance of witnesses (Cal. Const., art I, § 13; Pen. Code, § 686, subd. 3), but in the instant case he failed to show that the persons he subpoenaed could offer relevant testimony in his behalf. It is not claimed that they had personal knowledge of the matters relating to the charges. The defendant himself indicated that they could establish only that the sections of the Vehicle Code were discriminately enforced as to him (testimony manifestly incompetent, irrelevant and immaterial for the reasons heretofore stated), and, although invited by the court to set forth the specific nature of the testimony sought to be elicited from the witnesses in question, defendant failed to do so, nor is there any such showing in the petitions with which we are here concerned. Under the circumstances present in the instant proceeding, we are satisfied that the court did not err in quashing the subpoenas.'' (*In re Finn*, 54 Cal.2d 807, 813 [8 Cal.Rptr. 741, 356 P.2d 685].)

A like result has been achieved by the quashing of a request for the issuance of subpoenas to witnesses for the purpose of impeaching witnesses for the prosecution where: ''There was no showing that any one of the witnesses subpoenaed would have impeached any of the People's witnesses.'' (*People* v. *Hollander*, 194 Cal.App.2d 386, 391 [14 Cal.Rptr. 917].)

 The defendant subpoenaed the police chief for the sole purpose of asking questions as to police methods in dealing with minority groups in the city, and to propound a hypothetical question with whose defects we deal hereafter.

No attempt was made to show what testimony would be elicited from the prospective witness; there was no offer of proof.

Apart from the hypothetical question with which we deal

later, the subject matter of the proposed interrogation was irrelevant to the issue, and had no tendency to prove what in fact occurred at the time or place in question; under the authorities cited, there was no error in the court's ruling.[2]

### Defendant's Second Contention

Defendant submitted to the court a hypothetical question in writing which was marked as a court exhibit. The question was one that defendant would have propounded to the chief of police of San Diego. The court sustained an objection to it.

Among the assumed matters the question is based upon was that after entering the Autry house and seeing defendant in a bedroom within, the officers asked an occupant (Mrs. Autry) ''if defendant is the man who had just come in.''

Such an assumed fact is wholly unsupported by any evidence, direct or inferential.

Without discussing whether the opinion sought to be elicited was a proper subject of expert opinion, and without discussing whether the question omitted undisputed facts that should have been embodied, we believe the court's ruling was correct because of the inclusion of assumed facts of which there was no evidence.

Error cannot be predicated upon the sustaining of an objection to a hypothetical question that assumes facts of which the record is devoid of evidence. (*Linde* v. *Emmick*, 16 Cal.App.2d 676, 686 [61 P.2d 338]; *Estate of Phillips*, 202 Cal. 490, 495 [261 P. 709].) The court, without an objection having been made, might properly exclude such a question.

There was no error in the court's rulings on the propriety of the hypothetical question regardless of the stated grounds of objection. (*Davey* v. *Southern Pac. Co.*, 116 Cal. 325, 330 [48 P. 117].)

### Defendant's Third Contention

Defendant requested that the following special interrogatories be submitted to the jury:

''Did the police officers, or either of them, assault defendant before defendant offered any physical resistance?''

---

[2]In *Dillenbeck* v. *City of Los Angeles*, 69 Cal.2d 472 [72 Cal.Rptr. 321, 446 P.2d 129], the Supreme Court held it error to exclude written bulletins which might have been rules establishing standards for police conduct in the operation of emergency vehicles, a departure from which might have been a failure to use due care. A record of the contents of the documents was established by their offer in evidence. No such attempt was made here to show standards of police conduct by an offer of proof.

"If so, was the assault committed with or without lawful necessity?"

"Did defendant resist the assault with any greater force than he reasonably believed necessary to protect himself against injury in the circumstances?"

"Was defendant reasonable in the circumstances in believing that the force he used was necessary to protect himself from injury?"

He also requested the submission of the following forms of special verdicts:

"We, the jury in the above-entitled cause find that Officer Donald Knoll did assault defendant John Rhone without lawful necessity."

"We, the jury in the above-entitled cause find that Officer Donald Knoll did not assault defendant, John Rhone without lawful necessity."

Concerning the forms of special verdicts requested, it is immediately apparent that they do not provide for a determination of all the ultimate facts upon which the court could draw conclusions of law, that defendant was or was not guilty of the offenses charged against him.

One factual issue, the answer to which bore necessarily upon the question whether the officers acted reasonably in taking hold of defendant's arms when he walked out of the house, is whether it was defendant who drove the car pursued by the officers and ignored their request that he stop before he entered the Autry house. Defendant's account was to the contrary.

Section 1150, Penal Code, is as follows: "The jury must render a general verdict, except that in a superior court, when they are in doubt as to the legal effect of the facts proved, they may, except upon a trial for libel, find a special verdict."

Section 1152, Penal Code, is as follows: "A special verdict is that by which the jury find the facts only, leaving the judgment to the Court. It must present the conclusions of fact as established by the evidence, and not the evidence to prove them, and these conclusions of fact must be so presented as that nothing remains to the Court but to draw conclusions of law upon them."

Nothing in the record indicates that the jury expressed or experienced any difficulty in applying the court's instructions to the facts impliedly found by the jury.

There may be circumstances in which it might be error for

the court to refuse to invite the jury at its option to return a special verdict or for the court to fail to submit such special verdict on its own motion.

On the other hand, it has been held as a matter of law in some circumstances that the refusal to submit a special form of verdict was proper (*People* v. *Rehman*, 253 Cal.App.2d 119, 157 [61 Cal.Rptr. 65]; and see *People* v. *Anderson*, 199 Cal. App.2d 510, 522 [18 Cal.Rptr. 793]).

The defendant complains only of the refusal of the court to submit the particular forms of special verdicts and interrogatories prepared by him. Those forms did not cover all the facts at issue under the evidence. The refusal to submit them was not error.

### DEFENDANT'S FOURTH CONTENTION

That is the contention that was abandoned at the time of oral argument. Defendant submitted a form of instruction which the court refused to give.

The requested instruction, so far as it contained a statement of the law, was fully covered by the instructions given; that the judge may have expressed himself as refusing it as a formula instruction is of no consequence.

### DEFENDANT'S FIFTH CONTENTION

▮ Defendant requested the following instruction. The failure to give it he assigns as error.

"To make an arrest in a house, a peace officer may break open the door or window of the house in which the person arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired. The opening by police of a closed screen or other door constitutes a breaking within the meaning of this instruction.

"Since it appears from the evidence in this case that the police officers entered the Autry home without demanding admittance or explaining their purpose, I charge you that their entry was illegal and an arrest, if any, made by them in the house after such entry was not a valid arrest."

The question whether the police acted legally in entering the Autry house without first knocking, identifying themselves, announcing their purpose and requesting admittance, is irrelevant to the issues in the case at bench. In view of the language of Penal Code, section 834a, the illegality of an arrest made in the house would not justify resistance on the

part of defendant.[3] (*People* v. *Baca,* 247 Cal.App.2d 487, 496 [55 Cal.Rptr. 681]; *People* v. *Curtis,* *(Cal.App.) 70 Cal. Rptr. 271.) There is no question here of the use of physical evidence seized as the result of a search incidental to an unlawful arrest, as in *People* v. *Rosales,* 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489].

It is further true that defendant was seeking to evade the officers who were engaged in an immediate and in-view pursuit of defendant, which made unnecessary what would have been superfluous as far as defendant was concerned.

### DEFENDANT'S SIXTH CONTENTION

To appreciate defendant's argument, a quotation from his brief will be helpful. He writes: "In the voir dire examination of the jury panel and in closing argument, appellant sought to make reference to the Report of the National Advisory Commission on Civil Disorders for the purpose of demonstrating that by reason of the existence within the United States of 'two societies, one black, one white—separate and unequal' there are different ways of life, one for the ghetto and one for the rest. When the only two Negro veniremen were excused by the prosecutor upon peremptory challenge, any jury awareness of the nature of ghetto life and police practices there was eliminated, and other evidence to fill the gap was needed if the jury was to function as a body representative of the total community. For these reasons the exclusion of references to the Kerner Commission Report was highly prejudicial to appellant's cause."

The assumption that defendant lived in a ghetto area is unsupported by the record, unless unpaved streets are found only in ghettos, or Negro citizens live exclusively in ghettos. The record shows, rather, that defendant was in full-time employment, was a high school graduate, owned and drove a car of the then current annual model, and had himself obtained the assistance of the police on an earlier occasion when his car was stolen. The house in which defendant took refuge had at least two bedrooms, contained a telephone which apparently could be used in more than one room, had a rear

---

[3] Penal Code, section 834a, provides: "If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest."

*A hearing was granted by the Supreme Court on September 11, 1968. The final opinion of that court is reported in 71 Cal.2d —— [74 Cal.Rptr. 713, 450 P.2d 33].

patio and a front yard partly enclosed with a stone or brick wall.

The matters at issue were not whether at some times and places police had been guilty of brutality, but what were the conduct and actions of defendant and the two officers with whom he dealt. The report of the Kerner Commission was not in evidence and would not have been admissible in evidence, and was, therefore, not a proper subject for argument by counsel. The knowledge or lack of knowledge of the report by prospective jurors would in no way have indicated bias or prejudice or borne upon their quailfications, any more than would have their familiarity or lack of familiarity with the writings of James Baldwin.

We do not say that knowledge of the contents of the report would not be useful to a trial judge in pronouncing judgment on a convicted defendant whose living conditions were of the kind defense counsel assumes his client had.

The order appealed from is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.