[Crim. No. 3558. Fourth Dist., Div. One. Oct. 1, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. MICHAEL
GENE SINGLETARY, Defendant and Appellant.

Norbert Ehrenfreund, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark L. Christiansen, Deputy Attorney General, for Plaintiff and Respondent.

BROWN (Gerald), P. J.—Michael Gene Singletary appeals judgment, after jury trial, convicting him of firing a rifle at an automobile (Veh. Code, § 23110, subd. (b)) and assaulting a police officer with a deadly weapon (Pen. Code, § 245, subd. (b)).

About 1:30 a.m., February 25, 1968, San Diego Police Sergeant Gore drove a marked police car eastwardly on Imperial Avenue in San Diego City. As he entered the 28th Street intersection, he heard an explosion. Sergeant Gore circled the area, drove through the 28th Street-Imperial Avenue intersection again, and when he was midway in the 2800 block of Imperial Avenue he heard another explosion. He later found two .22-caliber bullet holes in his police car.

An informant told San Diego Police Lieutenant Stevens Singletary had committed the sniping and had a .22 caliber rifle in his bedroom closet. Lieutenant Stevens gave Police Sergeant Schwalbach this information. On February 29, 1968, Sergeant Schwalbach went to Singletary's home where he met Singletary's mother and asked her for the rifle. She gave him a .22 caliber pistol with which he left. Later the same day Sergeant Schwalbach returned again and asked Mrs. Singletary for the rifle; followed her to Singletary's bedroom where, from the closet, she gave him a .22 caliber riflle with the bolt missing. Schwalbach unsuccessfully searched the bedroom for the bolt but did find a rifle scope and .22 caliber cartridges.

The next day Schwalbach picked up Singletary and took him to the police station where, after interrogation, Singletary confessed he was the sniper. At the trial, Singletary recanted his confession and offered an alibi defense.

On appeal, Singletary challenges the legality of Schwalbach's search of his room; the admissibility of his confession; and the refusal of the judge to allow the jury to view the scene of the shootings. These issues presented mixed questions of

law and fact upon which evidence conflicted. Since we find error which will require a retrial of this case, it would be inappropriate for us to rule on those matters, as they must be resubmitted to the trial process.

 Singletary tried to learn the identity of the informer who told Lieutenant Stevens Singletary was the sniper and had the rifle in his closet. He subpoenaed Stevens to the trial. The deputy district attorney moved the court to quash Stevens' subpoena on the ground no foundation was laid the informant would be a material witness on the issue of guilt. The court erroneously quashed the subpoena. No offer of proof or foundation is normally required to summon any witness, let alone a foundational witness. A police officer enjoys no immunity to a subpoena. This is not like the situation of a subpoena duces tecum, where an affidavit or declaration of materiality is required by statute. The right of a public entity to refuse disclosure of an informant's identity (Evid. Code, § 1041) may not be exercised where a defendant demonstrates a reasonable possibility the anonymous informant could give evidence on the issue of guilt which might exonerate him (*Honore* v. *Superior Court,* 70 Cal.2d 162, 167-168 [74 Cal.Rptr. 233, 449 P.2d 169]; *People* v. *Garcia,* 67 Cal.2d 830, 839-840 [64 Cal.Rptr. 110, 434 P.2d 366]).

The prosecution's oral motion to quash was based on the deputy district attorney's statement Lieutenant Stevens ''would be unable to give any relevant testimony in this case, and the only purpose of the subpoena would be to place Detective Stevens on the stand and obtain from him the identity of the informant.'' The defense stated it wanted to question Stevens regarding any knowledge he had about the informant, what kind of person he was, when the information was received and what type of information it was.

 It is always permissible for a defendant to show his trial is being unfairly conducted. By establishing the prosecution is suppressing a material witness he demonstrates he has been denied a fair trial and due process. ''Such a denial would . . . exist where the prosecution was allowed to control the course of proceedings in a manner which would prevent the accused from presenting material evidence. The rule requiring the disclosure of the identity of an alleged informer is designed to prevent such injustices. The rationale of that rule is that the defendant, through the testimony of the informer when his identity is made known, might be able to rebut a material element of the prosecution's case and thereby

prove his innocence. The denial by the prosecution [or the trial court] of an opportunity for the defendant to seek out the informer and to defend by these means, where the testimony of the informer would be material to the issues, is unfair and oppressive to the defendant, and deprives him of due process of law. [Citing cases.]'' (*People* v. *Kiihoa,* 53 Cal.2d 748, 752 [3 Cal.Rptr. 1, 349 P.2d 673].) ▮ If the prosecution persists in its refusal to divulge an informant's identity after the defense demonstrates a reasonable possibility the informant could give material evidence on the issue of guilt which might exonerate the defendant, then the defendant is entitled to a dismissal. (*Honore* v. *Superior Court*, *supra,* 70 Cal.2d 162, 167.)

▮ It was unreasonable to require Singletary to establish the informer might be a material witness for the defendant *before* allowing him to question Stevens concerning the information Stevens had about, and received from, the informant. Stevens was the only known witness likely to have knowledge of facts which might overcome the privilege of nondisclosure. He was a preliminary witness to a possible material witness, the informer. It is not necessary to lay the foundation before examining a foundational witness. Although defendant had the burden of demonstrating the informer would be a material witness on the issue of guilt (*People* v. *Garcia, supra,* 67 Cal.2d 830, 839), here he was deprived of even being allowed to begin an attempt to carry that burden. Defendant was prevented from questioning the one known foundational witness who could assist in determining whether the informer was a material witness. Rather than being broad in nature or a fishing expedition, the examination necessarily would have had to concentrate on facts to determine the materiality of the informant as a witness, and if those facts warranted it, his identity. In quashing the subpoena for Lieutenant Stevens, the court exercised an extraordinary power which can be upheld only where it is clear the witness subpoenaed could not offer relevant testimony on defendant's behalf. (*In re Finn,* 54 Cal.2d 807, 813 [8 Cal.Rptr. 741, 356 P.2d 685]; *People* v. *Rhone,* 267 Cal.App.2d 652, 656-657 [73 Cal.Rptr. 463].) The bare conclusionary statement by the deputy district attorney that Lieutenant Stevens could not offer any relevant testimony is not controlling.

*Honore* v. *Superior Court, supra,* 70 Cal.2d 162, 166 (fn. 5) suggests the proper method to learn an informant's identity is by use of a motion for pretrial discovery. We do not

take this to mean that is the exclusive method. Pretrial discovery complements rather than supplants trial discovery (See *People* v. *Renchie,* 201 Cal.App.2d 1, 4-5 [19 Cal.Rptr. 734]). If a defendant fails to establish his right to disclosure of an informant's identity by pretrial discovery and a witness necessary to laying the foundation to overcome the governmental privilege of nondisclosure becomes unavailable at trial, then defendant's failure to seek discovery may be considered on a motion for trial continuance. (See *People* v. *McShann,* 177 Cal.App.2d 195, 199-200 [2 Cal.Rptr. 71].)

Here, however, Lieutenant Stevens, as a member of the San Diego police, must have been readily available for the trial. There is no contention otherwise. He had been subpoenaed. In neither the oral motion to quash nor in the trial judge's stated reasons for granting it is the failure of defendant to pursue available pretrial discovery mentioned. Under these circumstances it was an abuse of discretion to refuse access to his testimony even though discovery may have been available and demand for his attendance was not made until trial. (See *People* v. *Renchie, supra,* 201 Cal.App.2d 1, 4-5.)

It is unfortunate this case must be retried to learn whether Lieutenant Stevens' testimony warrants a conclusion the anonymous informant might be a material witness. We cannot speculate on this issue. It is enough that by blocking Singletary's attempts to interrogate Stevens the court prevented the establishment of the informant as a material witness, thus depriving Singletary of a fair trial.

Judgment reversed.

Coughlin, J., concurred.

WHELAN, J.—I dissent.

The issue here is whether a defendant in a criminal case has an absolute right, except as limited by statute, to discovery of the name of an informer, at any stage of the proceedings, or whether, in certain circumstances the right is one that is subject to the exercise of the court's discretion; and, if the latter is so, whether the trial court in the case at bench abused its discretion in denying discovery.

In some circumstances the right of discovery is subject to the exercise of the court's discretion (*People* v. *Cooper,* 53 Cal.2d 755, 771 [3 Cal.Rptr. 148, 349 P.2d 964]; *People* v.

*Newville,* 220 Cal.App.2d 267, 272 [33 Cal.Rptr. 816]). The circumstances in the case at bench are the following:

The preliminary hearing was on March 21, 1968, when defendant was represented by his trial counsel. Officer Joseph W. Schwalbach testified as to a conversation had with defendant at the police station on March 1, 1968. On cross-examination Schwalbach said he had also talked to defendant at the home of defendant's mother on February 29; that he first went to the mother's home because of information received from Lieutenant Stevens that "Mr. Singletary had told another party he had done some sniping in the area." Schwalbach testified he did not know the name of the person who gave that information to Stevens or who he was.

Extensive cross-examination then followed as to whether an illegal search had been made at the home of defendant's mother and whether the taking possession of the weapons and ammunition was the result of an illegal search. A motion made under section 1538.5 of the Penal Code to exclude all physical evidence obtained at the home and all intangible evidence connected with or resulting therefrom was denied.

No request was made that the name of Stevens' informant be disclosed.

Stevens was not a witness at the preliminary hearing.

Defendant was arraigned on April 11 when the trial was set for June 11. The minutes show "defendant reserves the right to make appropriate motions within a reasonable time."

On May 10, 1968, defendant presented a previously noticed written motion under section 995, Penal Code, which was denied.

On the same date defendant presented his previously noticed written motion to suppress all tangible evidence obtained as the result of the search or seizure of property from defendant's room, and all testimony concerning the observation or examination of such tangible evidence; and all statements of defendant obtained as a result of the search or seizure.

At the hearing of the motion to suppress, defendant's mother testified in support of the motion. No other witness testified.

On June 10, defendant presented a previously noticed written motion to continue the trial from June 11 to a later date because of the possible effect of the murder of Robert Kennedy on the trial. The motion was granted and the trial set for August 7, when the trial commenced. Meanwhile no re-

quest had been made for the name of the the informant; and no further motions were made.

Officer Schwalbach was the second witness for the prosecution when the trial commenced on August 7, and resumed the stand on August 8.

During the direct examination of Schwalbach, defense counsel asked leave to question the witness on *voir dire* concerning the circumstances under which defendant had made a statement. The court granted the request and the questioning was out of the presence of the jury. The court ascertained that trial counsel had represented defendant at the preliminary hearing and after some questions had been asked, made the following comment:

"THE COURT: Is it your contention, Mr. Ehrenfreund, that he was then under arrest and he was entitled to the admonition?

"You have been through that in the preliminary, and you have examined the circumstances; I am not about to waste this court's time in going over it again. You have been through the preliminary, you have asked all these questions, you know what the answers are. If you have something, all right; but not just to spread it around on the record and waste my time."

Thereafter the *voir dire* examination continued into August 8, and with argument, fills 74 pages of the transcript. Two of the witnesses called by defense counsel were San Diego police officers who had not previously testified.

On cross-examination of Schwalbach in the presence of the jury, defense counsel brought out that Schwalbach first went to defendant's home on February 29 because he had been told by Stevens that it had been reported defendant had been responsible for the sniping; that Schwalbach did not know and did not ask Stevens from whom the information came.

The prosecution rested its case during the morning of August 9. Defense counsel made an opening statement, then called and examined three witnesses before the noon recess.

When court reconvened at 2 p.m., the district attorney informed the court he wished to make a motion outside the presence of the jury. That motion was to quash the subpoena addressed to Stevens. It is clear the district attorney already had discussed the matter with defense counsel. The record reveals the actual words of the district attorney in making his motion and the exchange that followed it:

". . . I would move at this time that the subpoena heretofore served on Detective Stevens be quashed, for the reason that he would be unable to give any relevant testimony in this case, and the only purpose of the subpoena would be to place Detective Stevens on the stand and obtain from him the identity of the informant.

"MR. EHRENFREUND: Well, I object to the motion and ask that the motion to quash the subpoena be denied on the grounds that I think the information that Lieutenant Stevens could give would be pertinent to our case.

"THE COURT: In what way?

"MR. EHRENFREUND: It would be pertinent for several reasons. Your Honor yourself mentioned when I was making the argument with regard to the illegality of the arrest, I made the argument that the so-called confession was a product of illegal arrest, and your Honor stated that in your Honor's opinion there was probable cause to make an arrest partly because of this information. There is no—I think I have a right to establish whether or not this so-called informant was a reliable person, what kind of a person he was, in order to establish whether or not there was probable cause to make any arrest, or probable cause for the officers to do what they did. I think I have a right to question the officer in regards to any knowledge he had about this informant, what kind of a person that informant was, when that information was received, what type of information it was. We desire to call Lieutenant Stevens to the stand for that purpose, to find out everything we can about this informant, the nature of that person and his reliability.

"THE COURT: Well, the Court did not rule that the arrest was legal because of an informant . . .

". . . . . . . . . .

"You are just fishing, that's all; let's admit it, let's be frank about it.

"Mr. Ehrenfreund: I am trying to find out who this informant is and where he came from."

The foregoing includes everything said by defense counsel on the subject. Clearly he did not put forth the argument that he was attempting to lay a foundation in order to determine whether the informer's testimony might be material to the innocence of the defendant. In the briefs also defense counsel states that the purpose of the subpoena was "to discover the informant's identity" from the lips of Lieutenant Stevens.

The court discussed the circumstances under which the name of the informant might be obtained, including the circumstances when the informant's testimony might be relevant. Whether the court's views of the law were in all particulars correct, in light of *Honore* v. *Superior Court,* 70 Cal.2d 162 [74 Cal.Rptr. 233, 449 P.2d 169], decided several months later, should not be controlling. Since defendant has the burden of showing an abuse of discretion, the court's ruling should be sustained if legal grounds for it existed.

The court did point out that the identity and reliability of the informer were irrelevant to a voluntary search, the result of which gave probable cause for arrest.

In that respect the court was correct. Since defense counsel made no claim he wanted to call the informant as a witness, the possibility remains that experienced, intelligent and resourceful trial counsel had in mind the testimony given at the preliminary hearing by Schwalbach that Stevens' information was that defendant had told another person he "had done some sniping in the area." Defendant had not yet testified, but counsel must have known he would repudiate his confession and deny any participation in or knowledge of the shooting; but if defendant had told Stevens' informer about the shooting, an attempt might be made to produce the informer as a rebuttal witness; it would be well, therefore, to find out who the informer was and to question defendant before he should testify whether he had made such a statement.

Whether that was the purpose of defense counsel, it is clear his intention in calling Stevens as a witness was not to present testimony on any issue then before the jury, but was for purposes of discovery.

It is clearly unreasonable to say that defense counsel had the absolute right at that point in the trial to halt the proceedings for the purpose of threshing out the question whether the informer's identity must be disclosed; and then, if in fact he wanted the informer as a witness, to try to determine the availability of the witness and, if possible, to obtain his presence. Just as clearly it was within the court's discretion to grant or deny the request.[1]

---

[1] "The trial court was also entitled to consider, as bearing on the strength or weakness of defendant's claimed 'showing' (actually, merely an assertion) that he needed the statements to prepare for trial, the facts that defendant was indicted on June 11, 1959, that on July 29, 1959, trial was set for August 10, and that not until July 31 did defendant present

A trial judge in a criminal case already has a difficult job without imposing on him the duty to make rulings on the basis of arguments that are never made; his discretion is not exercised in a vacuum but in an atmosphere which can only be recreated by a searching look at the record. The record here shows the reasons, or lack of reasons, of defense counsel for wishing to call Stevens and that defense counsel had on March 21 all of the information concerning the informer that he had on August 9, but took no steps during the intervening period to obtain discovery of the informer's identity.

The trial court's ruling does not give a kind of immunity to police witnesses. Discovery, if proper, could have been obtained without calling Stevens as a witness. As mentioned, defense counsel had earlier in a *voir dire* hearing called two police witnesses.

A petition for a rehearing was denied October 14, 1969, and respondent's petition for a hearing by the Supreme Court was denied November 26, 1969. McComb, J., and Mosk, J., were of the opinion that the petition should be granted.

his motion that the prosecution be required to furnish these statements.'' (*People* v. *Cooper*, 53 Cal.2d 755, 771 [3 Cal.Rptr. 148, 349 P.2d 964].)