[Civ. No. 38101. First Dist., Div. Three. Mar. 22, 1976.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF HUMBOLDT COUNTY, Respondent;
GLEN R. LONG et al., Real Parties in Interest.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William B. Stein and Robert R. Granucci, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Sapper, Pentoney & Stone, Howard A. Pentoney and Kenneth M. Bareilles for Real Parties in Interest.

## OPINION

**SCOTT, J.**—The People seek to annul the order of the Humboldt County Superior Court quashing a subpoena issued to compel attendance of a witness to testify in a felony criminal prosecution.

In May 1975, Mabel B., a 15-year-old minor, reported to authorities that her stepfather, real party in interest Glen Long, had sexually molested her over the preceding several years. Mabel was removed from the home of her mother and stepfather, made a ward of the juvenile court (Welf. & Inst. Code, § 600, subd. (a)), and placed in a foster home. A complaint was filed against Long. Mabel testified at the preliminary hearing as the principal prosecution witness. Long was held to answer. An information was filed in superior court, charging him with violations of Penal Code sections 261 (rape), 288 (molestation of a minor), and 288a (oral copulation). The victim as to each charge was the stepdaughter, Mabel B.

The minor's mother and stepfather continued to reside together pending the criminal trial. During this time the minor periodically visited her mother and stepfather, under the supervision of the Humboldt County Welfare Department.

A subpoena was issued and served on the minor to appear and testify at the trial of Long, to commence on December 2, 1975. The minor, represented by counsel, moved to quash the subpoena. A hearing was held on December 1, 1975, on the minor's motion. She testified that she did not want to testify against her stepfather. The reasons stated appear in the record, as follows:

"Q. And would you tell Judge Thomas, please, Mabel, just what—what your feelings are at this time and why you don't want to testify.

"A. Well, it's tearing the family apart real bad and what communication me and my mother's had it's—it's torn my father apart and I'd just like to see the family get back together and me testifying will really mess it up.

"Q. Now, you said that with—what communication you've had with your mother, what is your relationship with your mother? How close are you with your mother, Mabel?

"A. We are not very close. We've never been.

"Q. You've never been very close, is that correct?

"A. Yes.

"Q. Do you have a desire to try and develop a closer relationship with your mother?

"A. Yes, I do.

"Q. Do you feel that—do you feel that if—if this matter was forced to go to trial and you had to testify as you testified at the preliminary examination that there would be no chance whatsoever for your mother to ever accept you again?

"A. Yes.

"Q. Is it important to you, Mabel, that you are accepted by your mother?

"A. Yes, it is.

"Q. And why, because you had problems with her continuously over the past several years, have you not?

"A. Yes.

"Q. Why do you want to be accepted by your mother? Tell the Judge.

"A. Because mom always accepted my big sister and my two brothers and she's never accepted me, and it's always been my goal to try and get her to accept me, and that's—I just want her to accept me."

The minor further testified that the charges against Long were true and that her preliminary hearing testimony was accurate. She in no particular recanted her prior testimony as to the sexual offenses against her. She denied that any pressure had been placed upon her not to testify. She stated, however, that her mother disbelieved the charges against her stepfather and that one of her brothers spread rumors around school that she was "no good." The minor was hopeful but uncertain as to whether her mother and stepfather would be receptive to some kind of

counselling to assist in effecting a family reconciliation. She clearly felt that if she testified, there would be no hope of reconciliation with her mother. A social worker, Tahme Clark, who had counselled Mabel during the wardship, testified that the family had a better chance of reconciliation if Mabel did not testify. The court granted the motion to quash the subpoena.

The People contend (1) that the superior court had no authority to quash a subpoena for a material witness, and (2) that the order, in effect, amounted to an invalid dismissal under Penal Code section 1385, which provides for dismissals in the interest of justice. We agree.

"There is no statutory authority to quash a subpoena, other than a subpoena duces tecum. It was held in an early case that in the absence of a statutory provision for such an order, an order quashing a subpoena was a nullity. [Citation.] It has since been established that the court may quash a subpoena that is regular on its face where *the facts justify such action.*" (*People* v. *Rhone* (1968) 267 Cal.App.2d 652, 657 [73 Cal.Rptr. 463]; italics added.) A subpoena may properly be quashed where the witness would not have contributed material evidence. (See, e.g., *In re Finn* (1960) 54 Cal.2d 807, 813 [8 Cal.Rptr. 741, 356 P.2d 685]; *People* v. *Singletary* (1969) 276 Cal.App.2d 601, 604 [81 Cal.Rptr. 79]; *People* v. *Rhone, supra,* at pp. 656-657.) There is no question that the evidence to be given here is material. We can find no case justifying the quashing of a subpoena on other grounds. The witness' belief that reconciliation will be facilitated by her decision not to testify cannot constitute such a ground. The trial court's order therefore constitutes an abuse of its discretion.

The order quashing the subpoena was tantamount to dismissal of the criminal prosecution. Without the testimony of Mabel, the prosecution of the crimes would have been a futile gesture. Penal Code section 1385 provides in part: "The court may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." Such a dismissal is a bar to any other prosecution for the same offense if it is a misdemeanor, but not if it is a felony. (Pen. Code, § 1387.)

 "Although the power given the trial court under section 1385 is very broad [citation], the discretion to be exercised is not absolute [citation]. Such dismissal must be 'in furtherance of justice' . . . ." (*People*

v. *Superior Court (Schomer)* (1970) 13 Cal.App.3d 672, 677 [91 Cal.Rptr. 651].) In *People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491, 505 [72 Cal.Rptr. 330, 446 P.2d 138], the court set forth the factors to be considered in deciding to dismiss *after* the verdict: "weighing of the evidence indicative of guilt or innocence, the nature of the crime involved, the fact that the defendant has or has not been incarcerated in prison awaiting trial and the length of such incarceration, the possible harassment and burdens imposed upon the defendant by a retrial, and the likelihood, if any, that additional evidence will be presented upon a retrial." In *People* v. *Ritchie* (1971) 17 Cal.App.3d 1098, 1105 [95 Cal.Rptr. 462], the court concluded that most of these factors should also be applied in determining whether to dismiss *before* trial.

It may be significant that possible trauma for the victim/witness is not one of the criteria mentioned for use in determining whether justice warrants dismissal. The parties have not referred this court to any case discussing the trial court's authority to dismiss an action in order to protect the victim/witness.

In *People* v. *McAlonan* (1972) 22 Cal.App.3d 982 [99 Cal.Rptr. 733], after both sides had rested, the trial judge, although convinced the defendant was guilty of possession of marijuana as charged, dismissed the action under section 1385. The trial judge had been advised that a conviction would preclude the defendant from being accepted by the Navy, and concluded that the interests of the defendant, and the interests of society in his rehabilitation would be better served by a dismissal than by conviction. The *McAlonan* court found that the reasons were not sufficiently stated in the minutes, but that even had they been sufficiently stated, would not support a dismissal. The court made the following statement in that regard: "Sincere though an individual judge's belief may be that a guilty defendant's rehabilitation would be facilitated by avoiding conviction, we are convinced society's interest that justice be dispensed with an even hand and in accordance with statutory authority precludes use of the dismissal statute to avoid conviction." (At p. 987.)

Although the *McAlonan* case is different from this case in that it involves rehabilitation of the defendant and not the victim, the theory stated in the quoted passage should apply as well here. Society has an interest in even handed justice, which can be satisfied only by continuing the prosecution in this case.

We conclude that it would be an abuse of discretion to dismiss the information against Long. This order, which is tantamount to such dismissal, should be analyzed under the same criteria.

Petitioner relies principally on Welfare and Institutions Code section 502, which provides: "The purpose of this chapter is to secure for each minor under the jurisdiction of the juvenile court such care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the State; to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when his welfare or safety and protection of the public cannot be adequately safeguarded without removal; and, when the minor is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents. This chapter shall be liberally construed to carry out these purposes."

It is clear from the record that, although not sitting as a juvenile court judge, the trial court did take judicial notice of the juvenile court file of Mabel before rendering its decision quashing the subpoena. Long has cited no authority in support of his position that the juvenile court's control over Mabel operates to preclude the prosecutor from compelling her to testify if the court concludes it would not be in her best interest to testify. The fact that she is a ward of the juvenile court does not grant to the superior court the authority to quash a subpoena compelling her to testify in a criminal matter before the court.

The broad purpose of the juvenile court law, as set forth in section 502, hardly justifies dismissal of sex crime charges against an adult involving a 15-year-old girl victim, in the vague hope that in doing so the victim can become happily reconciled with the perpetrator of the crime and a hostile mother. All too often, juvenile court judges witness the tragic dilemma faced by young girls who have been sexually victimized by their fathers and stepfathers. Many times, as here, the mother, motivated by either a disbelief of her daughter or concern over her own hardships should her husband be convicted and incarcerated, chooses to side with her husband. The pathetic youngster then must, as did the minor here, try to salvage some parental affection by attempting to thwart the prosecution of the person who has victimized her. Mabel B. as the individual victim, and society as the larger victim require a judicial

determination of whether Long is guilty of the crimes charged. Only in that manner can justice be done for all parties concerned.

■ We do not construe Welfare and Institutions Code section 502 as vesting a superior court judge, sitting as a juvenile court judge or otherwise, with the discretionary authority to dismiss, over the objection of the district attorney, a felony charge against the alleged perpetrator of a sex crime involving a ward of the juvenile court, or to quash a subpoena directed to a ward of the juvenile court to testify in a criminal trial.

Let a peremptory writ of mandate issue directing the Superior Court of Humboldt County to set aside its order of December 1, 1975, quashing the subpoena of Mabel B.

Draper, P. J., and Brown (H. C.), J., concurred.

The petition of real party in interest Mabel B. for a hearing by the Supreme Court was denied May 19, 1976.