Filed 2/5/26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ALEXANDER ESPARZA, | |
| Petitioner, | E085807 |
| v. | (Super.Ct.No. FSB24003655) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| THE PEOPLE et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. R. Glenn Yabuno, Judge. Petition granted.

Law Office of Kirk Tarman & Associates and Ryan Burke for Petitioner.

No appearance for Respondent.

Tom Bunton, County Counsel, and Daniel J. Hill for Real Party in Interest, San Bernardino County Public Guardian.

Jason Anderson, District Attorney, and Brent J. Schultze, Deputy District Attorney, for Real Party in Interest, the People.

INTRODUCTION

After the People charged him with kidnapping for ransom, reward, or extortion (Pen. Code, § 209, subd. (a)), petitioner Alexander Esparza subpoenaed the alleged victim, his fiancée L.S., to testify in his defense at the preliminary hearing.[1]  Real Party in Interest, the San Bernardino County Public Guardian (the Public Guardian), moved to quash the subpoena on the ground that L.S. was incompetent to testify under Evidence Code section 701 because a probate court had recently found her "gravely disabled" and appointed the Public Guardian as her conservator under the Lanterman–Petris–Short Act (Welf. & Inst. Code, § 5000 et seq. (the LPS Act).  The trial court ruled that the probate court's grave disability finding also constituted a finding that she was incompetent to testify and granted the motion to quash.

Esparza seeks a writ of mandate compelling the trial court to deny the Public Guardian's motion and allow L.S. to testify at his preliminary hearing.  He argues that the trial court committed legal error by presuming incompetence to testify from a grave-disability finding under the LPS Act.  We agree with Esparza and therefore grant the petition.

---

[1]  Unlabeled statutory citations refer to the Penal Code.

FACTUAL BACKGROUND

In late 2024, the People charged Esparza with kidnapping his fiancée, L.S., for ransom, reward, or extortion in violation of section 209, subdivision (a).[2] At the time of the alleged kidnapping, L.S. was under a temporary LPS Act conservatorship and was placed under the care of the Public Guardian in a facility in Redlands. L.S. allegedly went missing from the facility and was found several months later, when she and Esparza were attempting to return to the United States from Mexico.

Esparza was arraigned on October 9, 2024. A few days later, on October 11, 2024, a probate court issued an order appointing the Public Guardian as L.S.'s conservator under the LPS Act and giving the Public Guardian the authority to make medical decisions on her behalf. The court found that L.S. was "gravely disabled as a result of mental disorder and is unable to provide for basic personal needs of food, clothing, and/or shelter." The court also found that L.S. was "incapable of making rational decisions about medical treatment" and "lack[ed] the mental capacity to rationally understand the nature of the medical problems, the proposed treatment, and the attendant risks." The court did not state in its order which mental disorder it found that L.S. suffered from; however, the conservatorship investigator's report, which was submitted to the court before its ruling, states that L.S. had been diagnosed with schizophrenia.

---

[2] The charging document is not included in the appellate record.

In January 2025, Esparza served the Public Guardian with a subpoena seeking L.S.'s appearance and testimony at his upcoming preliminary hearing. The Public Guardian filed a motion to quash the subpoena, arguing, among other things, that L.S.'s status as gravely disabled under the LPS Act meant that she was incompetent to testify within the meaning of Evidence Code section 701. Esparza opposed the motion. Regarding L.S.'s competency, he argued that a grave disability finding was not dispositive on the issue of L.S.'s competency to testify because the two standards are distinct.

At the hearing on the motion to quash, the trial court heard argument from the parties, then announced its ruling as follows: "[I]t is the Court's opinion after reading the moving papers and opposition and doing its own research that it is not a credibility issue. It is a [competency[3]] issue, pursuant to Evidence Code 701. [¶] And it is the Court's belief that the [competency] issue has already been determined. There has already been a finding that [L.S.] does not have the [competency] to testify. I respectfully disagree with defense's position on the matter. I don't believe it is a situation that has to be relitigated under 701."

Esparza filed a timely petition for a writ of mandate challenging the trial court's ordering granting the motion to quash and requesting a stay. We granted the stay request

---

[3] In its ruling, the trial court incorrectly referred to witness "capacity" as opposed to "competency." A witness's capacity to testify—their personal knowledge of the matter—is governed by Evidence Code section 702 and was not raised as an issue by the Public Guardian. (Evid. Code, § 702.)

and issued an order to show cause.  The Public Guardian responded as the real party in interest.  The People responded that they take no position on the motion to quash.

DISCUSSION

Esparza argues the trial court erred by concluding that L.S.'s grave-disability finding renders her incompetent to testify under Evidence Code section 701.  We agree.

Section 866, subdivision (a), applies to preliminary hearings and states that "[w]hen the examination of witnesses on the part of the people is closed, any witness the defendant may produce shall be sworn and examined."  That provision "allows for a broad introduction of evidence, both by the prosecution and the defense."  (*People v. Eid* (1994) 31 Cal.App.4th 114, 130.)  As a general rule, "every person, irrespective of age, is qualified to be a witness and no person is disqualified to testify to any matter."  (Evid. Code, § 700.)  Under Evidence Code section 701, subdivision (a), a person may be disqualified as a witness for one of two reasons:  (1) the witness is incapable of expressing themselves so as to be understood, or (2) the witness is incapable of understanding the duty to tell the truth.  (Evid. Code, § 701, subd. (a).)

The party challenging the witness bears the burden of proving disqualification by a preponderance of the evidence.  (*People v. Lewis* (2001) 26 Cal.4th 334, 360.)  Unlike a witness's personal knowledge or capacity to testify, which is a question of fact for the jury to decide, "a witness's competency to testify is determined exclusively by the court."  (*Ibid.*)  "[T]he *credibility* of a witness is an issue for the jury, and not a relevant factor in determining competence to testify."  (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1264, fn. 16.)  Moreover, "[i]nconsistencies in testimony and a failure to remember aspects of

5

the subject of the testimony . . . do not disqualify a witness," but instead "present questions of credibility for resolution by the trier of fact." (*People v. Mincey* (1992) 2 Cal.4th 408, 444 (*Mincey*).)

The LPS Act authorizes the creation of renewable one-year conservatorships for those who are "gravely disabled" due to a mental health disorder or chronic alcoholism. (*Conservatorship of Eric B.* (2022) 12 Cal.5th 1085, 1095 citing Welf. & Inst. Code, §§ 5150, 5250, 5350.) As relevant here, the Act defines "gravely disabled" as "[a] condition in which a person, as a result of a mental health disorder, a severe substance use disorder, or a co-occurring mental health disorder and a severe substance use disorder, is unable to provide for their basic personal needs for food, clothing, shelter, personal safety, or necessary medical care." (Welf. & Inst. Code, § 5008, subd. (h)(1)(A).)

The issue of whether incompetence to testify can be presumed from a grave-disability finding under the LPS Act appears to be one of first impression. However, the LPS Act itself states that "[n]o person may be presumed to be incompetent because he or she has been evaluated or treated for mental disorder . . . , regardless of whether such evaluation or treatment was voluntarily or involuntarily received." (Welf. & Inst. Code, § 5331.) Furthermore, it is well established that other types of incompetence—to stand trial, to waive certain trial rights, to give or withhold consent to medical treatment—may not be presumed from a grave-disability finding. (See *Jackson v. Superior Court* (2017) 4 Cal.5th 96, 100-102 [Incompetence to stand trial is legally distinct from being gravely disabled under the LPS Act.]; *Conservatorship of John L.* (2010) 48 Cal.4th 131, 154

6

[same conclusion regarding incompetence to waive right to be present at trial]; *Conservatorship of C.O.* (2021) 71 Cal.App.5th 894, 915 [holding that courts "may not simply presume" an LPS Act conservatee is incompetent to waive his right to a jury trial]; *Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1313 (*Riese*) ["Appointment of a conservator under LPS, as under the Probate Code, does not involve an adjudication of incompetence" to make decisions about one's own medical treatment.].) Indeed, it has been said to be "one of the cardinal principles of [the] LPS [Act] that mental patients may not be presumed incompetent solely because of their hospitalization." (*Scott S. v. Superior Court* (2012) 204 Cal.App.4th 326, 336, citing *Riese*, at p. 1315.)

Although those decisions do not involve the determination of competence to testify under Evidence Code section 701, we think that their holdings apply in this context with equal force. First, like the standards for those other types of competence, the standard for competence to testify is distinct from the standard for determining grave disability under the LPS Act. The relevant definition of grave disability covers persons who cannot provide for their basic personal needs as a result of a mental health disorder. (Welf. & Inst. Code, § 5008, subd. (h)(1)(A).) In contrast, Evidence Code section 701 asks whether a person can express themself so as to be understood by others and whether they understand the duty to tell the truth. (Evid. Code, § 701, subd. (a).) Because the two standards are different, one cannot serve as a substitute for the other. For example, a person might be unable to provide for their basic personal needs due to severe depression (or, in this case, schizophrenia) yet still be capable of expressing themself in an

7

understandable way and of understanding the duty to tell the truth. As our Supreme Court explained in *In re Qawi* (2004) 32 Cal.4th 1, where it held that incompetence to refuse medical treatment may not be presumed from a finding of severe mental disorder under the Mentally Disordered Offender Act (§ 2960 et seq.): Where present, " ' "mental illness 'often strikes only limited areas of functioning, leaving other areas unimpaired, and consequently . . . many mentally ill persons retain the capacity to function in a competent manner.' " ' " (*Id.* at p. 17.)

The determination of competency to testify is "a delicate and personal evaluation" that the trial court must conduct on a [case-by-case] basis. (*People v. Scaggs* (1957) 153 Cal.App.2d 339, 354.) Whether a witness's mental health disorder renders them incapable of expressing themself or understanding the duty to tell the truth must be determined by the trial court during voir dire, the answer to those questions cannot be presumed from a prior finding regarding their mental health. We therefore conclude that the trial court erred when it ruled that L.S.'s competence to testify was "already . . . determined" by the fact that a probate court had found her to be gravely disabled under the LPS Act.

Our conclusion that incompetence to testify under Evidence Code section 701 may not be presumed from a prior grave disability finding or involuntary medication order under the LPS Act is supported by analogous case law involving competence to testify. In *In re Disbarment of Mazuran* (1928) 88 Cal.App. 272, a case that predates the enactment of the LPS Act, the court found that a witness had been "adjudged an incompetent and a guardian of his estate [had been] appointed" was not dispositive on the

issue of competency to testify.  (*Id.* at p. 277.)  The court explained that "the fact of an adjudged incompetency would be relevant to the inquiry; but, standing alone, would not conclude the matter."  (*Ibid.*; see *People v. Horowitz* (1945) 70 Cal.App.2d 675, 696 [holding that the witness's prior commitment to an institution "for insanity" is "not conclusive" as to his competency to testify].)

On multiple occasions, our Supreme Court has held that a mental disorder or cognitive deficiency is not, on its own, sufficient to demonstrate that a witness is incompetent to testify.  For example, in *People v. McCaughan* (1957) 49 Cal.2d 409, our Supreme Court held that when a state hospital patient with a mental disorder is called as a witness, "the competency of [that] witness is to be determined by the trial court in the exercise of its judicial discretion."  (*Id.* at p. 421.)  The Court explained:  "The question to be determined is whether the proposed witness's mental derangement or defect is such that he was deprived of the ability to perceive the event about which he is to testify or is deprived of the ability to recollect and communicate with reference thereto.  [Citations.] It bears emphasis that the witness's competency depends upon his *ability* to perceive, recollect, and communicate.  [Citation.]  Whether he did perceive accurately, does recollect, and is communicating accurately and truthfully are questions of credibility to be resolved by the trier of fact."  (*Id.* at p. 420.)

Similarly, in *People v. Lewis* (2001) 26 Cal.4th 334, the Court held that the fact that a witness "suffered from mental disorders and his testimony was difficult to comprehend at times" was not, on its own, sufficient to demonstrate that the witness was incompetent to testify within the meaning of Evidence Code section 701.  (*Id.* at p. 360.)

9

In *People v. Avila* (2006) 38 Cal.4th 491, the Court held that the fact that a witness was a "sociopath" was not, on its own, dispositive of the issue of whether he understood the duty to tell the truth. (*Id.* at p. 589.)

In a similar vein, on the issue of intellectual capacity, our Supreme Court has held that very young children are not, as a matter of law, incompetent to testify. (*Mincey*, *supra*, 2 Cal.4th at p. 444 [five-year-old child was not incompetent to testify]; see *People v. Dennis* (1998) 17 Cal.4th 468, 526 [four-year-old who was "an eyewitness to the events" was not incompetent to testify because her "voir dire . . . showed that she could perceive and recollect, and she understood she should not invent or lie about anything she said in court"].) Taken together, these cases demonstrate that the determination of whether a witness is competent to testify is governed by a specific standard that is distinct from other standards that apply to mental disorders and cognitive capacities. As a result, the former cannot stand in for the latter.

The Public Guardian raises alternative grounds for upholding the trial court's ruling despite its legal error, but we find neither of them persuasive. First, the Public Guardian contends that, in L.S.'s case, the trial court's ruling was correct because the probate court not only found her to be gravely disabled but also found her to be incompetent to give or withhold consent to medical treatment. Relying on *Riese*, the Public Guardian argues that an involuntary medication order under the LPS Act is dispositive of an individual's competency to testify as a witness because the order is based upon "the underlying principle of incompetence." We disagree. As *Riese* itself explained, competence "to give or withhold consent to medical treatment" is just one type

10

of competence, and there are "other types of competency assessments required to be made by trial courts." (*Riese, supra*, 209 Cal.App.3d at pp. 1317, 1321.)

Incompetence in the treatment context is different from competence to testify under Evidence Code, section 701—it means that a person is "incapable of making rational decisions about [one's] own medical treatment." (*Qawi, supra*, 32 Cal.4th at p. 20.) And, because it measures something different, it makes sense that it has a different standard than the competency standard at issue here. When determining "the *specific competency* to consent to [medical] treatment" a trial court "should focus primarily upon three factors"—namely, (1) whether the person is aware of their medical condition, (2) whether they can understand the benefits and the risks of, as well as the alternatives to, the proposed treatment, and (3) whether they can otherwise participate in the treatment decision by means of rational thought processes. (*Riese, supra*, 209 Cal.App.3d at pp. 1322-1323, italics added.) Because medical and testimonial competence are not the same, we respectfully reject the Public Guardian's argument that the probate court's involuntary medication order supports the trial court's denial of the motion to quash.

Second, the Public Guardian argues that the trial court properly granted the motion to quash because L.S.'s testimony would have been irrelevant to the issue of whether there was enough evidence to hold Esparza to answer for the kidnapping charge. According to the Public Guardian, nothing L.S. could say in her testimony would be relevant to the lack of consent element of section 209 because she was in a temporary LPS Act conservatorship at the time she went missing and therefore her the Public

Guardian as her conservator was the only party with the authority to consent to her leaving her placement. We are not persuaded.

"A subpoena may properly be quashed where the witness would not have contributed material evidence." (*People v. Superior Court (Long)* (1976) 56 Cal.App.3d 374, 378.) Because L.S. is the alleged victim of the charged crime, her testimony will undoubtedly contribute material evidence. If, on remand, the trial court determines that L.S. is competent to testify in the proceeding, she would be a percipient witness to the alleged crime. On a scale of materiality, it is difficult to imagine a more material witness.

Section 209, subdivision (a), makes it a felony to kidnap a person "for ransom, reward, or to commit extortion or to exact from another person any money or valuable thing." To warrant holding a defendant to answer for that charge, the People must show that the following elements are supported by probable cause: (1) the defendant kidnapped a person; (2) the defendant held or detained or intended to hold or detain the person; (3) the defendant did so to obtain a reward, or to commit extortion, or to exact from another person something of value; (4) the person did not consent to being carried away; and (5) the defendant did not actually and reasonably believe that the person consented to being carried away. (CALCRIM No. 1202.) As the alleged victim and a percipient witness to the alleged crime, L.S.'s testimony would be relevant to every element of the charge.

DISPOSITION

Let a writ of mandate issue, directing the superior court to vacate its order granting the Public Guardian's motion to quash, to enter an order denying the motion, and to determine L.S.'s competence under the standard set out in Evidence Code section 701. The previously ordered stay is vacated upon issuance of the remittitur. (Cal. Rules of Court, rule 8.490(d).)

CERTIFIED FOR PUBLICATION

FIELDS
                                                                          J.

We concur:

RAMIREZ
            P. J.

CODRINGTON
            J.

13